**KLESTADT WINTERS JURELLER**
  **SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, NY 10036-7203
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Tracy L. Klestadt
John E. Jureller, Jr.
Brendan M. Scott
Andrew C. Brown
Kevin B. Collins

*Proposed Counsel to the Debtors and Debtors-*
  *in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------x
In re                                                   :
                                                        :           Chapter 11
BROADBAND TELECOM, INC., *et al.*, [1]     :
                                                        :           Case No. 25-73095 (AST)
                                                        :
                                                        :           (Joint Administration Requested)
                                                        :
                            Debtors.          :
---------------------------------------------------------x

**DEBTORS' MOTION TO APPROVE (I) RETENTION AND EMPLOYMENT OF ROBERT WARSHAUER AS INDEPENDENT DIRECTOR TO THE DEBTORS *NUNC PRO TUNC* TO AUGUST 21, 2025; (II) RETENTION AND EMPLOYMENT OF JOHN D. BAUMGARTNER AS CHIEF RESTRUCTURING OFFICER OF THE DEBTORS, *NUNC PRO TUNC* TO THE PETITION DATES; AND (II) APPROVING AND SO ORDERING PROPOSED STIPULATION SETTING FORTH THE TERMS OF AN AGREEMENT BETWEEN THE DEBTORS, SPVS, BANKIM BRAHMBHATT, <u>AGENT, AND LENDERS</u>**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: (1) BB Servicer, LLC (3400); (2) Carriox Telecap LLC (4403); (3) Carriox Towercap LLC (1520); (4) Bridgevoice, Inc. (9499); and (5) Broadband Telecom, Inc. (0930). The location of the Debtor Broadband Telecom, Inc.'s principal place of business is 100 Quintin Roosevelt Blvd, Suite 503, Garden City, New York 11530, and the Debtors' service addresses in these Chapter 11 Cases is the same.

**TO THE HONORABLE ALAN S. TRUST,**
**CHIEF UNITED STATES BANKRUPTCY JUDGE:**

The debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), by and through their  undersigned counsel, respectfully submit this motion (the "Motion"), pursuant to sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), for the entry of an order authorizing and approving (i)  retention and employment of Robert Warshauer as Independent Director of the Debtors *nunc pro tunc* to August 21, 2025; (ii) retention and employment of John D. Baumgartner as chief restructuring officer of the Debtors, *nunc pro tunc* to the Petition Date (as defined below); and (ii) approving and so ordering a proposed stipulation (the "Stipulation") setting forth the terms of an agreement between the Debtors, certain of their affiliates, Bankim Brahmbhatt ("Brahmbhatt")**,** Agent (as defined herein) and Lenders (as defined herein) (attached as **Exhibit "A"**), and granting related relief.  In support of this Motion, the Debtors respectively represent as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. § 1408.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      The statutory predicates for the relief sought herein are sections 105(a) and 363(b) of the Bankruptcy Code.

## BACKGROUND

3.      On August 12, 2025 (the "Petition Date"), the Debtors commenced the above captioned chapter 11 cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

4.    The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5.    The Debtors have requested joint administration of their Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).

6.    No trustee, examiner, or statutory committee of creditors has been appointed in these Chapter 11 Cases.

**A.    The Debtors**

  i.    <u>The BB Debtors</u>

7.    Broadband Telecom and Bridgevoice each own 50% of the equity interests in BB Capital SPV, LLC ("<u>BB Capital</u>").  BB Capital's main operational focus is to hold loans and provide factoring services to Broadband Telecom and Bridgevoice.

8.    Broadband Telecom and Bridgevoice are wholly owned subsidiaries of BB Carrier LLC (the "<u>BB Carrier</u>"), and were incorporated under the laws of the state of California and Delaware on March 14, 2005 and August 25, 2008, respectively.

9.    Broadband Telecom and Bridgevoice provide voice termination services across the world. Operations mainly consist of a wholesale trading business in which originating telecommunication carriers are interconnected via Voice over Internet Protocol ("<u>VOIP</u>") in which the traffic is routed over the Broadband Telecom and Bridgevoice networks to local service providers and telecommunication carriers in the destination countries with whom they have established agreements to manage the completion or termination of calls.  Upon providing services, Broadband Telecom and Bridgevoice invoice their customers and thereby generate receivables.  BB Capital purchases the receivables of Broadband Telecom and Bridgevoice, thereby providing Broadband Telecom and Bridgevoice with working capital.

10.     BB Servicer LLC ("<u>BB Servicer</u>", and together with BB Capital, and Broadband Telecom, the "<u>BB Debtors</u>") is a wholly owned subsidiary of BB Carrier and was organized under the laws of the state of Delaware.  BB Servicer is a servicer for Broadband Telecom and Bridgevoice.

    ii.     <u>The Carriox Debtors</u>

11.     Carriox Telecap and Carriox Towercap are wholly owned subsidiaries of Carriox Holding LLC ("<u>Carriox Holding</u>"), and were incorporated under the laws of the state of Delaware in November 2020.  Carriox Telecap and Carriox Towercap provide factoring services to the wholesale VoIP (Voice over Internet Protocol) carrier industry, SMS carriers, and cell tower infrastructure companies (the "<u>Carriox Factoring Clients</u>") by purchasing from the Carriox Factoring Clients, at a discount, the receivables the Carriox Factoring Clients generate by providing telecom services to their customers.  Carriox Telecap and Carriox Towercap, in turn, sell the receivables they purchase from the Carriox Factoring Clients to Carriox Capital II LLC ("<u>Carriox Capital</u>" and together with BB Capital, the "<u>SPVs</u>"), which is also a wholly owned subsidiary of Carriox Holding.

**B.     Secured Financing**

12.     BB Capital and Carriox Capital, as non-debtor Borrower[2], (ii) Bridgevoice and Broadband Telecom, as Receivable Generators, (iii) BB Servicer, (iv) Carriox Telecap and Carriox Towercap, as Factors, and CC Servicers, (v) Alter Domus LLC, as  administrative and collateral agent ("<u>Agent</u>"), and (vi) EAVF.SLF CC Leverage SPV LLC; EAVF/SLF BB Leverage SPV, LLC, and AVF III US Aggregator, L.P. (collectively, the "<u>Lenders</u>") entered into

---

[2]     Capitalized terms not otherwise defined shall have the meanings ascribed to them in the applicable Credit Agreement or Credit Document or the complaint in the DE Chancery Court Action (defined below).

that certain Credit Agreement dated as of August 6, 2024 (the "Credit Agreement") providing for a credit facility on the terms and conditions provided therein. [3]  Each of the Debtors has jointly and severally guaranteed the due and punctual performance of all Receivables Generator Obligations and Servicer' obligations pursuant to the Credit Agreement and related docmentation.  To secure their obligations under the Credit Agreement, certain of the Debtors granted to Agent, for the benefit of the Lenders, a security interest in substantially all of their assets pursuant to that certain Pledge and Security Agreement, dated as of August 6, 2024 (the "Pledge and Security Agreement").

13.    Brahmbhatt signed a certain "Bad Acts Guaranty, " dated as of August 6, 2024, to guarantee the obligations under the Credit Agreement.   On August 12, 2025, the Agent commenced an action in the Supreme Court, New York, Index No. 654771/2025, to enforce the Bad Acts Guaranty. On the Petition Date, Brahmbatt commenced a case under Chapter 11 of the Bankruptcy Code in this Court, Case No. 25-73100.

14.    On July 21, 2025, the Lenders, with cooperation and approval from Agent, sent a notice pursuant to the Credit Agreement declaring that one or more Events of Default had occurred under Section 8.1 of the Credit Agreement and that one or more Grantor Events of Default had occurred under the terms of the Pledge and Security Agreement; and

15.    On July 23, 2025, Agent gave notice of the occurrence of Events of Default, declared the outstanding Obligations under the Credit Agreement to be due and payable, and demanded immediate payment thereof; and

---

[3] This is an incomplete summary of the terms of the Credit Agreement.  The full and complete terms are set forth in the Credit Agreement and related agreements.  These facts are for explanatory purposes only, and all rights and defenses to claims under the Credit Agreement are reserved

16.     On July 24, 2025, the Lenders commenced an action (the "DE Chancery Court Action") against the SPVs, the Debtors, Brahmbhatt, and Jigar Bhatt (collectively, the "Defendants") in the Court of Chancery of the State of Delaware ("Delaware Chancery Court").

17.     On August 8, 2025, the Delaware Chancery Court issued a temporary restraining order prohibiting the Debtors and SPVs from, among other things, (i) transferring assets, (ii) purchasing receivables and (iii) transacting any business with a value in excess of $5,000, absent consent from the Lenders.

18.     The Lenders have expressed concerns and a lack of confidence in the ability of the Debtors' current management to manage the Debtors' day to day affairs and oversee the Chapter 11 Cases.

### C.     The Stipulation

19.     In an effort to get the Chapter 11 Cases on the proper footing and in the spirit of working cooperatively with one of their largest stakeholders, the Debtors met and conferred with the Lenders in an effort to avoid the filing by the Lenders of a motion seeking the appointment of Chapter 11 trustee to administer these Chapter 11 Cases.   After substantial arms-length negotiations, the parties have agreed to the terms of the Stipulation, which provides, *inter alia*, for the appointment of Robert Warshauer as the Independent Manager or Independent Director of the Debtors' as applicable, and provides for the retention of John Baumgartner as the Debtors' Chief Restructuring Officer.[4]

---

[4] The Stipulation also provides for the retention of Klestadt Winters Jureller Southard & Stevens, LLP as proposed counsel to the Debtor and the retention of Getzler Henrich & Associates, LLC as the Debtors financial advisors.  The Debtors anticipate filing separate requests for approval of such retentions.

20. The Stipulation provides in material part as follows:[5]

a) Subject to approval by the Bankruptcy Court, the Debtors, the SPVs, and Brahmbhatt, in his capacity as a member, manager or officer of the Debtors and SPVs only, agree to take all actions necessary or appropriate to cause the election or appointment of Robert Warshauer ("Independent Director") to serve as the sole Director or Manager, as applicable, of each of the Debtors and SPVs, subject to the terms set forth herein. For avoidance of doubt, the Lenders and the Agent explicitly consent to the termination of the existing independent manager of the SPVs and the replacement of such independent manager with the Independent Director, and such other consents as necessary to effectuate such provisions hereunder, as applicable;

b) By Thursday, August 21, 2025 at 12:00  noon (Eastern Time), and notwithstanding that the Effective Date may not have occurred, the Debtors' members or shareholders, as applicable, through, Brahmbhatt, in his capacity as manager or managing member the Debtors' members or shareholders, shall duly execute corporate resolutions and/or written actions of shareholders or members (the "Debtors Resolutions") which shall provide that:

    i. the Debtors appoint Independent Director to serve as the sole Director or Manager, as applicable, of each of the Debtors, subject to the terms of an independent manager agreement satisfactory to the Agent and the Lenders ("Independent Director Agreement"), which shall include, *inter alia*, full authority to manage the Debtors, administer the Debtors' Chapter 11 Cases, pursue and consummate the sale of the assets of the Debtors, direct counsel and professionals retained by the Debtors, investigate and determine whether to pursue, and pursue, causes of action of the Debtors, and otherwise have the rights, duties and obligations of a debtor in possession in the Chapter 11 cases, together with the right to delegate authority to the CRO (as defined below);

    ii. the Debtors ratify the engagement of Klestadt Winters Jureller Southard & Stevens, LLP as counsel to the Debtors, subject to approval of the Bankruptcy Court in accordance with sections 327 and 330 of the Bankruptcy Code;

    iii. the Debtors ratify the engagement of John D. Baumgartner of Getzler Henrich & Associates LLC as the Chief Restructuring Officer ("CRO") in accordance with sections 327 and 330 of the

---

[5] This is an incomplete summary of the terms of the Stipulation. For a complete recitation of the terms of the Stipulation, parties are encouraged to review the Stipulation annexed hereto as Exhibit A

Bankruptcy Code subject to approval of the Bankruptcy Court; and

    iv.   the Debtors ratify the engagement of Getzler Henrich & Associates LLC as the financial advisor to the Debtors ("FA"), subject to approval of the Bankruptcy Court in accordance with sections 327 and 330 of the Bankruptcy Code.

By executing this Stipulation, the signatories to the Debtors Resolutions agree that they shall take no action to revoke or modify the Debtors Resolutions, nor take any corporate action on behalf of the Debtors contrary to the provisions thereof.

c)   By Thursday, August 21, 2025 at 12:00 noon (Eastern Time), and notwithstanding that the Effective Date may not have occurred, the SPVs' members, through Brahmbhatt, in his capacity as Chief Executive Officer or managing member of the SPVs' members, as applicable, shall duly execute corporate resolutions and/or written actions of shareholders or members (the "SPV Resolutions", and with the Debtor Resolutions, the "Resolutions") which shall provide that:

    i.   the SPVs appoint Independent Director to serve as the sole Manager for each of the SPVs, subject to the terms of an Independent Director Agreement satisfactory to the Agent and the Lenders, which shall include, *inter alia*, including, without limitation, (x) that the SPVs will grant the Independent Director sole authority to file petitions for relief with the Bankruptcy Court and (y) for the rights, powers and obligations set forth above with respect to the Debtors' Resolutions; and;

    ii.   the SPVs (a) shall engage Klestadt Winters Jureller Southard & Stevens, LLP as counsel to the SPVs effective immediately; (b) shall engage John D. Baumgartner of Getzler Henrich & Associates LLC as the CRO for the SPVs, effective immediately; and (c) shall employ Getzler Henrich & Associates LLC as the financial advisor to the SPVs, effective immediately.

By executing this Stipulation, the signatories to the SPV Resolutions agree that they shall take no action to revoke or modify the SPV Resolutions, nor take any corporate action on behalf of the SPVs contrary to the provisions thereof.

d)   The CRO of the Debtors and the SPVs shall act at the sole direction of the Independent Director as set forth in the Independent Director Agreement. The CRO may only be removed for "Cause". "Cause" shall mean any of the following with respect to the CRO: (a) a conviction for, or entering a plea of *nolo contendere* to, a charge of a felony (other than any motor vehicle

offense); (b) fraud; (c) misappropriation of funds or property of the Debtors or SPVs; (d) any act of willful misconduct or gross negligence that materially harms the Debtors or the SPVs, or (e) by order of the Bankruptcy Court after notice and a hearing, in the event of fraud, dishonesty, incompetence, or gross mismanagement of the Debtors or any other basis constituting grounds for the appointment of a Chapter 11 trustee.

e)  Upon entry of this Stipulation by the Bankruptcy Court, the CRO shall, among other responsibilities and actions: (i) promptly take all necessary or appropriate actions to secure access to and control over the books and records of the Debtors and the SPVs, including by terminating the access of any present or former officer, director or employee of the Debtors and the SPVs as the CRO may determine; and (iii) as soon as practicable, prepare a workstream plan and 13-week financial projections for the Debtors and the SPVs, which shall be provided to (a) the Independent Director, (b) the Lenders and the Agent, and (c) counsel for the Debtors and Brahmbhatt.

f)  The CRO shall provide progress reports to the Independent Director (via Zoom meetings or other agreed means of communications so determined by the Independent Director) as reasonably requested by the Independent Director, with the participation of the Lenders and the Agent at the Independent Director's discretion. In addition, the CRO shall provide Brahmbhatt with progress reports regarding the status of operations and business projections upon his reasonable request and as may be appropriate under the circumstances.

g)  The Independent Director, in consultation with the CRO and the SPVs' professionals, shall promptly take into consideration the filing of chapter 11 bankruptcy cases by the SPVs and provide status reports to the Lenders and the Agent and counsel to Brahmbhatt with respect to any decisions thereon.

21.    The Lenders and the Agent agree to negotiate in good faith with the Debtors, the

SPVs, the Independent Director and the CRO regarding the terms of a stipulation authorizing the

use of the Lenders' and the Agent's cash collateral, in accordance with Bankruptcy Code Section

363, in the Chapter 11 Cases by the Debtors, and in any bankruptcy cases filed by the SPVs,

which may provide for, among other things, use of cash collateral to pay the approved

professional fees of the Debtors and the SPVs, the compensation of the Independent Director,

and necessary payroll and other expense of the administration of the estates of the Debtors and, if

applicable, the SPVs, for an agreed period on agreed terms and conditions, and to pay for

reasonable premiums for appropriate directors and officers insurance for the Debtors and for the SPVs if they file bankruptcy cases.

22.     As contemplated by the Stipulation, on August 21, 2025, the  applicable members, managers, and officers of the Debtors' and the SPVs' executed written consents and resolutions authorizing the appointment of Mr. Warshaur and Mr. Baumgartner in their respective roles. Copies of the executed written consents are annexed hereto collectively as **Exhibit "B".**

<u>**REQUESTED RELIEF AND BASIS THEREFOR**</u>

23.     The Motion requests, pursuant to sections 105 and 363(b) of the Bankruptcy Code, entry of an order, annexed as **Exhibit "C"**,  authorizing and approving (i)  retention and employment of Robert Warshauer as Independent Director to the Debtors *nunc pro tunc* to August 21, 2025; (ii) retention and employment of John D. Baumgartner as chief restructuring officer of the Debtors, *nunc pro tunc*  to the petition dates; and (ii) approving and so ordering the Stipulation, and granting related relief, and granting related relief.

**A. The Court Should Approve the Appointment of Robert Warshaur as the Debtors' <u>Independent Director</u>**

i.   <u>Qualifications of Independent Director</u>

24.     Mr. Warshauer was suggested for the role of Independent Director by the Lenders.  He is an experienced consensus building executive with 35 years of unique operational, financial and investment banking expertise with both public and private companies in a wide range of industries. Mr. Warshauer has worked with boards of directors, management teams and creditors on all aspects of capital markets transactions, including restructurings, refinancings and M&A.

25.    As set forth in his *curriculum vitae*, annexed hereto as **Exhibit "D"**, Mr. Warshaur has held numerous positions on various boards of director and executive management positions, including the following recent examples:

- **Runway Growth Capital, NY,** (NASDAQ:RWAY) Independent Director, March 2025 – Present Specialty finance company focused on providing flexible capital solutions to late-stage and growth companies seeking an alternative to raising equity

- **Desktop Metal Corp, MA,** (NYSE: DM) Independent Director, April 2025 – Present Leading 3-D printing and additive materials manufacturer serving the aerospace, automotive, medical and consumer industries

- **Synthego Corporation, CA,** Independent Director, April 2025 – August 2025 Industry leading supplier of CRISPR cell and gene solutions and gene editing therapies aimed at eradication of diseases and improved outcomes in therapeutic treatments

- **Accuride Corporation, MI,** Independent Director, January 2025 – March 2025 Leading supplier of steel and aluminum wheel end systems to the global commercial vehicle market

- **KAL Freight, Inc, Arlington, TX,** Independent Director, November 2024 – April 2025 Fast growing trucking company that offers a complete range of transportation and logistics, and trailer leasing services to diverse industries across the US

- **ZIPS Car Wash, Plano, TX,** Independent Director, October 2024 – Present The largest privately held car wash operator in the country with more than 275 locations across 23 states providing the highest quality express tunnel car wash in the industry

- **Worldwide Machinery, Houston, TX, Independent Director**, September 2024 - Present Supplier of large heavy earthmoving and pipeline laying equipment across the globe for sale, lease, and long-term rental

- **Chicken Soup for the Soul Entertainment, CT, (**NASDAQ:CSSE) Independent Director, May 2024 - July 2024 Publicly traded entertainment and media company as a premium provider of ad supported video-on-demand,owner of 50,000 content titles and 29,000 retail video kiosks

- **Powermat Technologies, Inc. Tel Aviv, Israel,** Board of Directors June 2020 - October 2022

Global provider of wireless charging platforms to consumers worldwide

- **Global Knowledge Inc, Cary, NC,** Independent Board of Directors June 2020 – June 2021
  World's leading technology skills training provider, supporting major tech enterprises & professionals

- **Redbox Entertainment, Inc, New York, NY,** (NASDAQ:RDBX) Board of Directors April 2022 - July 2022 Leading video on-demand streaming and video rental company

- **UniTek Global Services, Blue Bell, PA (NASDAQ: UNTK),** Board of Directors 2015 - 2018
  Fully integrated solutions provider, offering systems integration to cable, satellite carriers

ii. <u>Services to be Provided by Independent Director</u>

26.     Subject to Court approval of this Motion and consistent with the terms of the that certain Independent Director Agreement, annexed hereto as **Exhibit "E"**, Mr. Warshauer will serve on the Debtors' Board of Directors or Board of Managers as the sole and independent director or manager, as applicable and will have the following authority and responsibilities:

a) The Independent Director shall serve as the sole Director or Manager, as applicable, for each of the Debtors and SPVs, and have all rights and obligations, and provide those oversight services required, of an independent director or manager under each of the Debtors' and SPVs respective corporate organizational agreements (as may be amended from time to time including as amended to allow for the appointment of the Independent Director, the "<u>Operating Agreements</u>").

b) administration of the Chapter 11 Cases in the same manner as a director or manager of a debtor in possession and in the case of the SPVs determining if and when to commence bankruptcy cases on behalf of such companies. In furtherance of the foregoing, the Independent Director is hereby empowered and granted sole authority to manage the Debtors' Chapter 11 Cases, except as set forth herein, and to take such actions as he deems necessary, appropriate, advisable or desirable to pursue and maximize the benefits of the Debtors' Chapter 11 Cases, including without limitation, (i) pursuing and consummating any sale or sales of the Debtors' assets he deems necessary or appropriate, developing, negotiating, confirming and performing under a bankruptcy plan of reorganization, and negotiating, executing and delivering on behalf of the Debtors any and all agreements, instruments and related documents that, in the judgment and discretion of the Independent Director

are necessary, appropriate, advisable or desirable for pursuing and consummating such sale or sales of the Debtors' assets or for such development, negotiation and confirmation of, and performance under, such a bankruptcy plan of reorganization, including without limitation executing asset purchase agreements, plans and related documents, (ii) to develop and effectuate an appropriate budget for the administration of the Chapter 11 Cases, (iii) to determine whether to investigate potential causes of action of the Debtors against any person or entity, (iv) to determine whether to commence causes of action against any person or entity (v) to determine whether to retain any additional professionals, (vi) to cause the Debtors to enter into, execute, deliver, certify, file and/or record and perform such agreements, instruments, motions, affidavits, applications for approvals or ruling of governmental or regulatory authorities, certificates or other documents, and (v) to incur all such fees and expenses and to take such other action, as in the judgment of the Independent Director shall be or become necessary, proper and desirable to prosecute to a successful completion the Chapter 11 Cases, to effectuate the restructuring of debt, other obligations, organizational form and structure and ownership of the Company and to carry out and put into effect the purposes of the foregoing resolutions and the transactions contemplated by these resolutions (collectively, the "<u>Director Services</u>").

c) The Independent Director shall have the right to delegate authority to the Chief Restructuring Officer ("<u>CRO</u>"), John D. Baumgartner of Getzler Henrich & Associates LLC, including to manage the day-to-day operations of the Debtors, take all actions necessary or appropriate to secure access to and control over the books and records of the Debtors, provide progress reports to the Independent Director as requested, provide a workstream plan and 13-week financial projections for the Debtors, and perform similar tasks of a chief restructuring officer in Chapter 11 bankruptcy cases. The CRO shall act at the sole direction of the Independent Director.[6] It is intended that the Independent Director shall consult with the CRO with respect to decision-making in the operations of the Debtors, any investigations of the Debtors' affairs, and bankruptcy case-related matters.

---

[6] Pursuant to the Stipulation, the CRO may only be removed for "Cause". "Cause" shall mean any of the following with respect to the CRO: (a) a conviction for, or entering a plea of *nolo contendere* to, a charge of a felony (other than any motor vehicle offense); (b) fraud; (c) misappropriation of funds or property of the Debtors or SPVs; (d) any act of willful misconduct or gross negligence that materially harms the Debtors or the SPVs; or (e) by order of the Bankruptcy Court after notice and a hearing, in the event of fraud, dishonesty, incompetence, or gross mismanagement of the Debtors or any other basis constituting grounds for the appointment of a Chapter 11 trustee.

27.     Notably, the Independent Director shall not have authority to terminate the engagement of the CRO of the Company without the written consent of the Shareholder unless "Cause" exists for such termination. "Cause" shall mean any of the following with respect to the termination of John Baumgartner as CRO: (a) a conviction for, or entering a plea of *nolo contendere* to, a charge of a felony (other than any motor vehicle offense); (b) fraud; (c) misappropriation of funds or property of the Company or any of its affiliates; (d) any act of willful misconduct or gross negligence that materially harms the Company or any of its affiliates; or (e) by order of the Bankruptcy Court after notice and a hearing, in the event of fraud, dishonesty, incompetence, or gross mismanagement of the Debtors or any other basis constituting grounds.

28.     The Debtors require Mr. Warshauer to provide the Independent Director Services to instill creditor confidence in the face of the Lenders' concerns about potential breach of contractual obligations of the Debtors under the Credit Agreement and related documentation prior to the Petition Date.  The Debtors believe the appointment of Mr. Warshauer is will allow the Debtors to work cooperatively with the Lenders to develop an administrative budget to allow for the continued operations of the Debtors in these Chapter 11 Case with the consensual use of the Lenders' cash collateral  Without the appointment of Mr. Warshauer, the Debtors would almost certainly face an immediate threat of a motion to appoint a Chapter 11 trustee and the prospect of a contested motion seeking authority to use the Lenders' cash collateral without the Lenders' consent.

29.     As noted above, Mr. Warshauer has extensive expertise serving on various boards, and the Debtors believe him to be well qualified to serve in the role of Independent

Director and believe his appointment will preserve value and provide a viable opportunity for the Debtors to restructure their businesses.

<u>Compensation of Independent Director</u>

30.     Subject to this Court's approval and as set forth in the Independent Director Agreement, the Debtors, the Lenders, and Mr. Warshauer have agreed to the following compensation and expense structure (the "<u>Compensation Structure</u>") in consideration for the Director Services to be rendered by in these Chapter 11 Cases:

> a)  The Debtors will pay the Independent Director $45,000 per month, commencing on August 20, 2025, or such other date provided by order of the Bankruptcy Court (the "<u>Commencement Date</u>"), payable on the first business day of each month, plus reimbursement of reasonable out-of-pocket expenses incurred in connection with Director Services rendered by the Independent Director.

31.     Because Mr. Warshauer is not being employed as a professional under section 327 of the Bankruptcy Code, he is not required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code.

**B.     The Court Should Approve the Retention of John Baumgartner as Chief Restructuring Officer**

i.  <u>Qualifications of CRO</u>

32.     Getzler Henrich is a middle-market corporate turnaround and restructuring firm that provides strategic financial services in large-scale corporate restructuring transactions, including turnarounds, workouts, crisis management, interim management, corporate restructuring, bankruptcy advisory, Lean-Six Sigma analysis and implementation, and distressed mergers and acquisitions.  Getzler Henrich also assists companies in achieving operational efficiency through process improvement, the implementation of supply chain solutions, sales and marketing effectiveness, technology advisory, and transaction advisory services.

33.    Getzler Henrich is one of the oldest and most respected names in middle-market corporate restructuring, assisting companies all over the world with their unique approach that emphasizes rapid and pragmatic decision making.  Since its founding in 1968, Getzler Henrich has developed a strong track record, assisting both underperforming and healthy companies. Getzler Henrich has demonstrated its ability to implement realistic solutions to complex challenges confronting business and their creditors, and to help companies improve their operations. Getzler Henrich's engagements have spanned a broad spectrum of industries.  Getzler Henrich executes solutions with unmatched competency and stark integrity and adapts its approach to the specific needs of each individual client to ensure the most practical proposals prevail.

34.    Getzler Henrich has been retained to provide restructuring management and related services in connection with the restructuring of the following companies, among others, in jurisdictions around the country.  *See*, *e.g.*, *In re Presperse Corp.*, Case No. 24-18921 (Bankr. D.N.J. Oct. 10, 2024); *In re Aztec Fund Holding Inc., et al.*, Case No. 24-90436 (Bankr. S.D. Tex. Sep. 27, 2024); *In re ConnectEdu, Inc., et al.*, Case No. 14-11238 (Bankr. S.D.N.Y. June 16, 2024); *In re SC Healthcare Holdings, LLC*, Case No. 24-10443 (Bankr. D. Del. Apr. 23, 2024); *In re Urban Commons 2 West LLC, et al.*, Case No. 22-11509 (Bankr. S.D.N.Y. Dec. 1, 2022); *In re Hamon Holdings Corp., et al.*, Case No. 22-10375 (Bankr. D. Del. June 10, 2022).

35.    John D. Baumgartner, a Managing Director of Getzler Henrich, has more than 20 years of restructuring, consulting, and corporate finance experience.  Specifically, he has been involved with financial and operational restructurings, viability analyses, solvency analyses, valuation of assets and enterprises, asset divestures, and due diligence.  Mr. Baumgartner's sector expertise includes telecom, manufacturing, distribution, power and utilities, transportation,

and retail services, among other areas.  Examples of companies which I have served in the CRO role include Ector County Energy Center LLC, (Case No. 22-10320, Bankr. D. Del), Pine Lake Property LP (Case No. 25-90001, Bankr. S.D. Tex), and ENGlobal Corporation (Case no. 25-90083, Bankr. S.D. Tex).  Accordingly, Mr. Baumgartner has developed significant relevant experience and expertise that will assist him in providing effective and efficient services in these Chapter 11 Cases.

36.     As set forth in the Baumgartner Declaration, Getzler Henrich was engaged by the Debtor pursuant to an engagement letter on or around August 11, 2025 (the "<u>Engagement Letter</u>"), to provide crisis and restructuring management services and to designate John Baumgartner as the Debtors' Chief Restructuring Officer in accordance with the terms of the Engagement Letter.  As a result, Mr. Baumgartner has become familiar with the Debtors' corporate and capital structure, management, operations, and various other aspects of their businesses.  Mr. Baumgartner has also developed a significant amount of institutional knowledge regarding the Debtors' operations, finances, and systems.  Mr. Baumgartner has taken an active role in the Debtors' day-to-day management and the Debtors' restructuring efforts.  On the basis of this experience and knowledge, the Debtors believe that Mr. Baumgartner is uniquely positioned and well-qualified to perform these services and represent the Debtors' interests in this Chapter 11 Case.

   ii.   <u>Services to Be Provided by CRO</u>

37.     Subject to Court approval of this Motion and consistent with the terms of the Engagement Letter, Mr. Baumgartner will provide such turnaround management services as he and the Debtors, through the Independent Director, deem appropriate, including, but not limited to, the following:

a) Assess, monitor, and manage operations and recommend and implement the restructuring or wind down of operations as appropriate;

b) Oversee any Section 363 sale process;

c) Assist with the preparation of Court motions as requested by counsel;

d) Assist with compliance with the reporting requirements of the Bankruptcy Code, the Bankruptcy Rules, and local rules, including preparation of reports, monthly operating statements, and schedules;

e) Assist with the preparation of business plans and financial projections, and analysis of alternative operating scenarios;

f) Participate in Court hearings and, if necessary, provide testimony in connection with any hearings before the Court;

g) Consult with all other retained parties, secured lender (if any), creditors' committee (if any), and other parties-in-interest;

h) Assist the Independent Director with the investigation and pursuit of potential causes of action of the Debtors and their respective estates and of the SPVs and, if they become debtors under the Bankruptcy Code, their respective estates;

i) Assist with the analysis and reconciliation of claims against the Debtors and other bankruptcy avoidance actions;

j) Manage and control access to the Debtor's bank accounts, including having signatory authority;

k) Conduct a review and forensic accounting of the Debtors' historic operations and books and records; and

l) Perform such other tasks as appropriate and as may reasonably be requested by the Debtor's management, independent director or counsel and agreed to by Getzler Henrich.

38.    The Debtors require qualified professionals to render these essential professional services. As noted above, Mr. Baumgartner has substantial expertise in all areas for which it is proposed to be retained. Accordingly, the Debtors submit that Mr. Baumgartner is well qualified and best suited to perform these services and to assist the Debtors in the Chapter 11 Cases.

39.    All of the services that the CRO will provide to the Debtors will be undertaken at the request of the Independent Director and will be conducted so as to avoid duplicative efforts among the professionals retained in the Chapter 11 Cases.  The CRO will also use reasonable efforts to coordinate with the Debtors' other retained professionals to avoid the unnecessary duplication of services.

iii.  <u>CRO Compensation</u>

40.    Subject to this Court's approval and as set forth in the Engagement Letter, the Debtors and the CRO have agreed to the following compensation and expense structure (the "<u>Compensation Structure</u>") in consideration for the services to be rendered by in these Chapter 11 Cases:

a)  The fee for the CRO services will be Mr. Baumgartner's standard hourly rates of $825 per hour, respectively, and include the services performed by Mr. Baumgartner only. Additional Getzler Henrich personnel assisting Mr. Baumgartner will be billed at Getzler Henrich's standard hourly rates as follows:

| | |
|---|---|
| Principal/Managing Director: | $735 - $895 |
| Director/Specialists: | $595 - $795 |
| Associate Professionals: | $225 - $595 |

b)  The Debtors shall also reimburse Mr. Baumgartner for reasonable out-of-pocket expenses incurred in connection with the performance of its services. Such expenses include, but are not limited to air travel, meals, local transportation, lodging, parking, delivery services, and photocopying.

41.    Because the CRO is not being employed as a professional under section 327 of the Bankruptcy Code, he is not required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code.  On a monthly basis, the CRO will file with the Court and serve on the Office of the United States Trustee and counsel for any official committee appointed in these chapter 11 cases (collectively, the "<u>Notice Parties</u>") a summary fee statement covering work performed for the previous month, which will include the names of and tasks fulfilled by the

CRO and additional personnel assisting him, and itemize any expenses incurred for the relevant period (the "Compensation Report").  Compensation Reports will summarize the services provided and identify the compensation earned and expenses incurred by the CRO for the previous month.  Compensation Reports will also summarize the services provided, identify the compensation earned by each officer and staff employee provided, and itemize the expenses incurred. Time records shall (i) be appended to the Compensation Reports, (ii) contain detailed time entries describing the tasks performed, and (iii) be organized by project category.  Where personnel are providing services at an hourly rate, the time entries shall identify the time spent completing each task in .5-hour increments and the corresponding charge (time multiplied by hourly rate) for each task.

42.    The Notice Parties shall have 10 days after the date each Compensation Report is served on the Notice Parties to object to such Compensation Report.  The Compensation Report, Mr. Baumgartner's staffing decisions, and all compensation identified in the Compensation Report will be subject to review by the Court in the event an objection is filed.  The compensation provided for in the Engagement Letter shall constitute full payment for the services to be rendered to the Debtors by Mr. Baumgartner.

43.    The Compensation Structure described above is comparable to compensation for turnaround management services, both in and out of court.  The Compensation Structure is also consistent with Getzler Henrich's normal and customary billing practices for cases of this size and complexity that require the level and scope of services outlined.  Mr. Baumgartner and the Debtors also believe that the Compensation Structure is reasonable and at favorable market rates.

D.    **Mr. Baumgartner and Getzler Henrich's Disinterestedness**

44.    To the best of the Debtors' knowledge, information and belief, other than as set forth in the Baumgartner Declaration, the CRO and Getzler Henrich: (i) have no connection with the Debtors, their creditors, their direct and indirect owners, other parties in interest, or the Office of the United States Trustee for the Eastern District of New York or any person employed in the Office of the United States Trustee; and (ii) does not hold any interest adverse to the Debtors' estates, except that Getzler Henrich and Mr. Baumgartner are connected to the Debtors by virtue of the Engagement Letter.

45.    Although the Debtors respectfully submit that the retention of the CRO is not governed by section 327 of the Bankruptcy Code, the Baumgartner Declaration discloses, among other things, any relationship that Getzler Henrich and Mr. Baumgartner have with the Debtors, their significant creditors, and other significant parties in interest known to Getzler Henrich. Based upon such disclosures, the Debtors submit that Mr. Baumgartner and Getzler Henrich do not hold or represent an interest adverse to the estate and is a "disinterested person" as that term is defined by section 101(14) of the Bankruptcy Code.

46.    In addition, as set forth in the Baumgartner Declaration, if any new relevant facts or relationships are discovered or arise, he will use reasonable efforts to identify such further developments and will file promptly a supplemental declaration where appropriate.

C.    **The Court Should Approve the Stipulation**

47.    As set forth above, prior to the Petition Date, the Lenders commenced the Delaware Chancery Court Action, wherein they alleged that the Debtors were engaged in an improper scheme to induce the Lenders to make advances under the Credit Agreement. Although the Defendants have not admitted any wrongdoing, at the outset of these cases, the

Lenders expressed concerns over the continued management of the Debtors in the Chapter 11 Cases by existing management.  It was apparent to the Debtors and their professionals that if the Debtors' current management remained in place, the Lenders would seek to appoint a Chapter 11 trustee and almost certainly would not consent to the use of their cash collateral by the Debtors.

48.      For that reason, the Debtors sought to negotiate the terms of the Stipulation in an effort to create a more cooperative environment and instill creditor confidence where there was none, such that the Debtors would have an opportunity to continue to operate their businesses with the Lenders' consent, and to seek to restructure their businesses, albeit under new management.

49.      The Debtors believe approval of the Stipulation and the resulting authorization to implement its terms will put the debtors on a viable path toward restructuring their businesses that will preserve value and avoid costly and value destroying litigation over the Debtors' management and the use of cash collateral.

50.      If the Stipulation is not approved, the Debtors will likely lose the ability to keep their organization together while they are mired in hotly contested litigation with the Lenders over every aspect of these Chapter 11 Cases.  Such a scenario would destroy the value of the Debtors' businesses to the detriment of all parties in interest.

51.      The Debtors believe it to be in the best interests of their Chapter 11 estates and their creditors to enter into the Stipulation and implement its terms.

## NOTICE

52.      The Debtors shall serve notice of this Motion on the following parties or, in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee for the Eastern District of New York; (ii) the Lenders; (iii) the holders of the 30 largest unsecured claims as set forth in the consolidated list filed with the Debtors' petitions; (iv) any known party interested in

purchasing the Debtors' assets; (v) the Office of the United States Attorney General for the Eastern District of New York; (vi) the Internal Revenue Service and all other applicable federal, state and local taxing authorities; and (vii) all known holders of liens, encumbrances, or security interests in their assets.  The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

**<u>NO PRIOR REQUEST</u>**

53.        No prior request for the relief sought in this Motion has been made to this or any other court.

**<u>CONCLUSION</u>**

**WHEREFORE**, the Debtors respectfully request that the Court enter the proposed order granting the Motion in the form annexed hereto as Exhibit "C", together with such other and further relief as the Court deems appropriate.

Dated:    New York, New York
          August 22, 2025

                              **KLESTADT WINTERS JURELLER**
                              **SOUTHARD & STEVENS, LLP**


                    By:    */s/ Tracy. L. Klestadt*
                           Tracy L. Klestadt
                           John E. Jureller, Jr.
                           Brendan M. Scott
                           Andrew C. Brown
                           Kevin B. Collins
                           200 West 41st Street, 17th Floor
                           New York, New York 10036
                           Tel: (212) 972-3000
                           Fax: (212) 972-2245
                           Email: tklestadt@klestadt.com
                                   jjureller@klestadt.com
                                   bscott@klestadt.com
                                   abrown@klestadt.com
                                   kcollins@klestadt.com

                           *Proposed Counsel to the Debtors and*
                           *Debtors-in-Possession*

09063-00018/17257106.2