EXECUTION VERSION

# INDEPENDENT DIRECTOR AGREEMENT

This Independent Director Agreement (this "Agreement") made as of August 21, 2025 between each of the following parties: Broadband Telecom, Inc. ("Broadband Telecom"); BB Servicer LLC ("BB Servicer"), Bridgevoice, Inc. ("Bridgevoice"); Carriox Telecap LLC ("Carriox Telecap"); and Carriox Towercap, LLC ("Carriox Towercap", and collectively, the "Debtors"); BB Capital SPV, LLC ("BB Capital") and Carriox Capital II, LLC ("Carriox Capital", and collectively, the "SPVs")(the Debtors and the SPVs as the "Companies"); Bankim Brahmbhatt ("Brahmbhatt") in his capacity as the sole member, manager, director, or officer, as the case may be, of the Debtors and SPVs; and Robert Warshauer (the "Independent Director") (collectively, the "Parties", each a "Party") provides for independent manager services according to the following:

1. <u>Bankruptcy Court Approval:</u>  This Agreement shall be effective and binding upon the Parties upon (i) execution by the Parties <u>and</u> (ii) the entry of an order by the Bankruptcy Court approving the terms of the Agreement (the "Effective Date"), and all of the terms, conditions, and provisions hereof shall be binding upon and inure to the benefit of the Parties hereto, their respective agents, representatives, successors, and assigns.

2. <u>Services Provided</u>.

    (a)    The Independent Director shall serve as the sole Director or Manager, as applicable, for each of the Companies, and have all rights and obligations, and provide those oversight services required, of an independent director or manager under each of the Companies' respective corporate organizational agreements (as may be amended from time to time including as amended to allow for the appointment of the Independent Director, the "Operating Agreements").

    (b)    The Parties agree that, in addition to oversight services required as an independent director or manager, the Independent Director is tasked with implementing the administration of the Companies' Chapter 11 Cases in the same manner as a director or manager of a debtor in possession and in the case of the SPVs determining if and when to commence bankruptcy cases on behalf of such companies.  In furtherance of the foregoing, the Independent Director is hereby empowered and granted sole authority to manage the Companies' Chapter 11 Cases, except as set forth herein, and to take such actions as he deems necessary, appropriate, advisable or desirable to pursue and maximize the benefits of the Companies' Chapter 11 Cases, including without limitation, (i) pursuing and consummating any sale or sales of the Companies' assets he deems necessary or appropriate, developing, negotiating, confirming and performing under a bankruptcy plan of reorganization, and negotiating, executing and delivering on behalf of the Companies any and all agreements, instruments and related documents that, in the judgment and discretion of the Independent Director are necessary, appropriate, advisable or desirable for pursuing and consummating such sale or sales of the Companies' assets or for such development, negotiation and confirmation of, and performance under, such a bankruptcy plan of reorganization, including without limitation executing asset purchase agreements, plans and related documents, (ii) to develop and effectuate an appropriate budget for the administration of the Chapter 11 Case, (iii) to determine whether to investigate potential causes of action of the Companies against any person or entity, (iv) to determine whether to commence causes of action against any person or

entity (v) to determine whether to retain any additional professionals, (vi) to cause the Companies to enter into, execute, deliver, certify, file and/or record and perform such agreements, instruments, motions, affidavits, applications for approvals or ruling of governmental or regulatory authorities, certificates or other documents, and (v) to incur all such fees and expenses and to take such other action, as in the judgment of the Independent Director shall be or become necessary, proper and desirable to prosecute to a successful completion the Chapter 11 Cases, to effectuate the restructuring of debt, other obligations, organizational form and structure and ownership of the Company and to carry out and put into effect the purposes of the foregoing resolutions and the transactions contemplated by these resolutions (collectively, the "Director Services").  The Independent Director, in consultation with the CRO (defined below) and the SPVs' professionals, shall promptly consider the filing of chapter 11 bankruptcy cases for the SPVs and provide status reports to (i) the Parties with respect thereto, (ii) the Lenders[1], and (iii) Alter Domus (US) LLC (the "Agent").

(c)     The Independent Director shall have the right to delegate authority to the Chief Restructuring Officer ("CRO"), John D. Baumgartner of Getzler Henrich & Associates LLC, including to manage the day-to-day operations of the Companies, take all actions necessary or appropriate to secure access to and control over the books and records of the Companies, provide progress reports to the Independent Director as requested, provide a workstream plan and 13-week financial projections for the Companies, and perform similar tasks of a chief restructuring officer in Chapter 11 bankruptcy cases.  The CRO shall act at the sole direction of the Independent Director.[2]  It is intended that the Independent Director shall consult with the CRO with respect to decision-making in the operations of the Companies, any investigations of the Companies' affairs, and bankruptcy case-related matters.

(d)     Nothing contained herein shall be deemed to waive, release or exclude the obligations of the Companies to seek approval of the Bankruptcy Court, upon notice and hearing, to the extent required by the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedures ("Bankruptcy Rules"), or the Local Rules of the United States Bankruptcy Court for the Eastern District of New York ("Local Rules"), including, without limitation, as to (i) the sale of assets of the Companies, (ii) the retention or termination of the Companies' professionals, including the CRO, and (iii) the resolution of claims by or against the Companies.

3.     Nature of Relationship.

---

[1]     Lenders mean the lenders from time to time party to that certain Credit Agreement dated as of August 6, 2024, between (a) (i) BB Capital and Carriox Capital, as Borrowers, (ii) Bridgevoice and Broadband Telecom, as Receivable Generators, (iii) BB Servicer, (iv) Carriox Telecap and Carriox Towercap, as Factors, and CC Servicers, (b) the lenders party thereto and (c) Alter Domus (US) LLC, as administrative and collateral agent (the "BB/Carriox Credit Agreement") and several ancillary agreements and above-identified lenders' direct and indirect parents, subsidiaries and/or affiliates.

[2]     Pursuant to the Stipulation dated August 20, 2025 (the "Stipulation"), the CRO may only be removed for "Cause".  "Cause" shall mean any of the following with respect to the CRO: (a) a conviction for, or entering a plea of *nolo contendere* to, a charge of a felony (other than any motor vehicle offense); (b) fraud; (c) misappropriation of funds or property of the Debtors or SPVs; (d) any act of willful misconduct or gross negligence that materially harms the Debtors or the SPVs; or (e) by order of the Bankruptcy Court after notice and a hearing, in the event of fraud, dishonesty, incompetence, or gross mismanagement of the Debtors or any other basis constituting grounds for the appointment of a Chapter 11 trustee.

(a)     The Independent Director is an independent contractor and will not be deemed an employee of the Companies for purposes of employee benefits, income tax withholding, F.I.C.A taxes, unemployment benefit or otherwise.

4.     Independent Director's Warranties.

(a)     The Independent Director warrants that no other party has exclusive rights to his services in the specific areas described and that the Independent Director is in no way compromising any rights or trust between any other party and the Independent Director or creating a conflict of interest.  The Independent Director also warrants that no other agreement will be entered into that will create a conflict of interest with this Agreement.  The Independent Director further warrants that he will comply with all state and federal laws and regulations, as applicable.

(b)     Throughout the term of this Agreement, the Independent Director agrees he will not, directly or indirectly engage or prepare to engage in any other activity in competition with any of the Companies' business or product, accept employment or provide services to (including services as a member of a manager or director) or establish a business in competition with the Companies.

(c)     The Independent Director has reviewed available information regarding the Companies and any affiliates and is satisfied, based on the information; provided that, he is independent from the persons controlling the Companies.  The Independent Director further warrants that he is independent of the Agent, the Lenders or any creditors of the Companies and holds no interest in, allegiance to, or any obligations to the Agent, the Lenders or any creditors of the Companies except as required by his obligations to the Companies hereunder.  The Independent Director further warrants that he has no economic interest in, nor has received any compensation from, any of the Lenders (as defined herein).  The Independent Director acknowledges that he has previously been engaged in matters where the Lenders have/had loans or investments, but there has never been a finding of a conflict, whether in or out of court..  The Independent Director shall have no interest in any transaction to be engaged in by the Companies which he may be asked to review and approve.

(d)     The Independent Director understands that he will be the sole Manager or Director of the Companies during the term of his appointment, absent further order of the Bankruptcy Court having jurisdiction over the Companies' Chapter 11 cases in the United States Bankruptcy Court for the Eastern District of New York under lead case No. 25-73095 (AST) (the "Bankruptcy Court")[3] and shall have sole and exclusive authority of a Director or Manager as defined under the Operating Agreements.

5.     Compensation.

The Companies will pay Independent Director $45,000 per month, commencing on August 20, 2025, or such other date provided by order of the Bankruptcy Court (the

---

[3] The Debtors' bankruptcy cases were assigned the following case numbers: Broadband Telecom, Inc., Case No. 25-73095; BB Servicer, LLC, Case No. 25-73096; Carriox Telecap LLC, Case No. 25-23098; Carriox Towercap LLC, Case No. 25-73099; and Bridgevoice, Inc., Case No. 25-73097.

3

"Commencement Date"), payable on the first business day of each month, plus reimbursement of reasonable out-of-pocket expenses incurred in connection with Director Services rendered by the Independent Director.

6. Indemnification and Insurance.

(a) The Companies will execute an indemnification agreement in favor of the Independent Director.

(b) At all times during the Term, the Companies shall have in force directors and officers liability insurance from an insurance carrier with an A.M. Best rating of (A-) or higher, in an amount and scope reasonable and customary for companies that are engaged in business similar to that of the Companies and are reasonably acceptable to the Independent Director (the "**Continuing Policy**") that includes "Side A DIC" coverage in an amount reasonably acceptable to Independent Director and naming the Independent Director as an insured under the policy and "Side A" coverage insuring directors and officers for claims against such directors and officers by reason of acts or omissions in their respective capacities as directors and officers, as applicable, including, without limitation, liabilities under securities laws or otherwise, whether claimed by a governmental unit or agency or private party, person, or entity. Upon notice from the Independent Director that the Independent Director is resigning from the Board (or substantially concurrently with the Independent Director's removal, if the Independent Director is removed from the Board), the Companies shall obtain, maintain and fully pay for irrevocable "tail" insurance policies covering the Independent Director as an insured person with a claims period of at least six (6) years from the date which Independent Director ceases to be a director of the Companies, with respect to matters existing or occurring at or prior to such date (the "**Tail Policy**" and collectively, with the Continuing Policy, the "**Insurance Policies**"). The Companies shall not cancel or change the Insurance Policies in any respect that would be adverse to the Independent Director. The Companies shall ensure that the Independent Director meets the definition of an "Insured Person" under the Insurance Policies. The cost of the Insurance Policies shall be borne solely by the Companies.

7. Term of Agreement. This Agreement shall be in effect from the Commencement Date through the date of termination of the Agreement as set forth in Section 8 hereof (the "Termination Date"). Any amendment to this Agreement must be approved by the Companies and approved by the Bankruptcy Court.

8. Termination.

(a) This Agreement shall automatically terminate upon the death of Independent Director, upon his resignation, upon his removal as the Independent Director, or upon the dismissal of the Companies' Chapter 11 Cases or, as to the SPVs, in the event of the SPVs not filing for bankruptcy protection, upon the sale of the Companies, or the satisfaction of the obligations owed to the Agent and the Lenders under BB/Carriox Credit Agreement and related agreements (the "Termination Date"). The Independent Director also may be removed (i) by order of the Bankruptcy Court, upon notice and hearing thereof, or (ii) for "Cause" as defined in the Stipulation.

(b)     In the event of any termination of this Agreement, the Independent Director agrees to return any materials transferred to the Independent Director under this Agreement, except as may be necessary to fulfill any outstanding obligations hereunder.  The Independent Director agrees that the Companies have the right of injunctive relief to enforce this provision.

(c)     The Companies' obligation in the event of such termination shall be to pay the Independent Director payments due through the Termination Date, except as otherwise ordered by the Bankruptcy Court.

(d)     Termination shall not relieve either party of its continuing obligation under this Agreement with respect to confidentiality of proprietary information.

9.     <u>Confidentiality</u>.

(a)     The Independent Director agrees that, except as set forth in this Agreement, the Confidential Information (as defined below) is confidential and proprietary to the Companies and their affiliates and subsidiaries and the Independent Director shall (i) hold the Confidential Information in confidence, (ii) not use the Confidential Information other than for the purpose of providing the Director Services, and (iii) disclose it only to its directors, managers, officers, employees, consultants, advisors, agents, attorneys, and others who have a specific need to know such Confidential Information in order for the Independent Director to provide the Director Services (each a "<u>Representative</u>"); provided, that, the Independent Director informs each Representative of the confidential nature of the information disclosed, and each Representative agrees to be bound by the terms of this Agreement.

(b)     "<u>Confidential Information</u>" means any and all data, materials, and other information disclosed or submitted in any form, format, or media by the Companies (or their affiliates or subsidiaries) or its representatives to the Independent Director, directly or indirectly, and whether or not marked "Confidential", "Proprietary", "Sensitive" or similar designation, together with all analyses, compilations, derivative works, studies or other materials in any form whatsoever.  For the avoidance of doubt, Confidential Information includes all Trade Secrets (as defined below) of the Companies and all data, materials and other information relating to, without limitation, products, processes, technologies, concepts, sketches, drawings, blueprints, outlines, notes, prototypes, inventions, know-how, designs, specifications, methods, codes, developmental or experimental work, improvements, discoveries, data, databases, software, manuals, copyrights, artistic works, characters, systems, patents, trademarks and the like, as well as applications and the like therefor, licenses, financial information, budgets, projections, marketing, selling and business plans, identity/lists of vendors, suppliers, and customers and information regarding the skills and compensation of representatives of the Companies or their affiliates or subsidiaries. Notwithstanding the foregoing, "Confidential Information" does not include information which (i) is already in the Independent Director's possession or control prior to the date of disclosure; provided, that if such information is known by Independent Director to be subject to another confidentiality agreement with or other contractual, legal or fiduciary obligation of secrecy to the Companies or any of their agents, nothing in this Agreement shall abrogate such other agreement or obligation, (ii) was or becomes generally available to the public other than as a result of a disclosure by Independent Director or any of his Representatives, (iii) becomes available to Independent Director on a non-confidential basis from a source other than the Companies or any

5

of their agents; provided, that such source is not prohibited by a confidentiality agreement with or other contractual, legal or fiduciary obligations of nondisclosure to the Companies or any of their agents, or (iv) is developed by Independent Director from a non-confidential source, without use of the Confidential Information or other breach of this Agreement. For purposes of this Agreement, "Trade Secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (A) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (B) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

10. Resolution of Disputes. Any dispute regarding the agreement (including without limitation its validity, interpretation, performance, enforcement, termination and damages) shall be determined in accordance with the laws of the State of New York, the United States of America. Any action under this Section 10 shall not preclude any party hereto from seeking injunctive or other legal relief to which each party may be entitled.

11. Notices. Any and all notices, requests and other communications required or permitted hereunder shall be in writing, by registered mail, or by email, to each of the parties to the addresses set forth below:

> Independent Director:
>
> > Mr. Robert Warshauer
> > P.O. Box 211
> > Park City, Utah 84060
> > Email: robertwarshauer@gmail.com
>
> To THE COMPANIES:
>
> > Klestadt Winters Jureller Southard & Stevens, LLP
> > 200 West 41st Street, 17th Floor
> > New York, New York 10036
> > Attn:   Tracy L. Klestadt
> >         John E. Jureller, Jr.
> >         Brendan M. Scott
> > Email: tklestadt@klestadt.com
> >         jjureller@klestadt.com
> >         bscott@klestadt.com

Any such notice shall be deemed given when received and notice given by registered mail shall be considered to have been given on the tenth (10th) day after having been sent in the manner provided for above.

12. Survival of Obligations. Notwithstanding the expiration of this Agreement, none of the Parties hereto shall be released hereunder from any liability or obligation to the other which has already accrued as of the time of such expiration or termination (including, without limitation,

the Companies' obligation to make any fees and expense payments required pursuant to Article 4 hereof) or which thereafter might accrue in respect to any act or omission of such party prior to such expiration or termination.

13.     Severability. Any provision of this Agreement which is determined to be invalid or unenforceable shall not affect the remainder of this Agreement, which shall remain in effect as though the invalid or unenforceable provision had not been included herein, unless the removal of the invalid or unenforceable provision would substantially defeat the intent, purpose or spirit of this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized officers, as of the date first written above.

INDEPENDENT DIRECTOR:

_____
Robert Warshauer, as an individual

THE DEBTORS:            BROADBAND TELECOM, INC.


By: _____
Name: Bankim Brahmbhatt
Title: Chief Executive Officer


BB SERVICER LLC


By: _____
Name: Bankim Brahmbhatt
Title: Chief Executive Officer


BRIDGEVOICE, INC.


By: _____
Name: Bankim Brahmbhatt
Title: Chief Executive Officer


CARRIOX TELECAP LLC


By: _____
Name: Bankim Brahmbhatt
Title: Chief Executive Officer

the Companies' obligation to make any fees and expense payments required pursuant to Article 4 hereof) or which thereafter might accrue in respect to any act or omission of such party prior to such expiration or termination.

13. <u>Severability</u>. Any provision of this Agreement which is determined to be invalid or unenforceable shall not affect the remainder of this Agreement, which shall remain in effect as though the invalid or unenforceable provision had not been included herein, unless the removal of the invalid or unenforceable provision would substantially defeat the intent, purpose or spirit of this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized officers, as of the date first written above.

<u>INDEPENDENT DIRECTOR</u>:

_____
Robert Warshauer, as an individual

<u>THE DEBTORS</u>:

BROADBAND TELECOM, INC.

By: _____
Name: Bankim Brahmbhatt
Title: Chief Executive Officer

BB SERVICER LLC

By: _____
Name: Bankim Brahmbhatt
Title: Chief Executive Officer

BRIDGEVOICE, INC.

By: _____
Name: Bankim Brahmbhatt
Title: Chief Executive Officer

CARRIOX TELECAP LLC

By: _____
Name: Bankim Brahmbhatt
Title: Chief Executive Officer

7

EXECUTION VERSION

CARRIOX TOWERCAP LLC

By: _____
Name: Bankim Brahmbhatt
Title: Chief Executive Officer

THE SPVS:

BB CAPITAL SPV, LLC

By: _____
Name: Bankim Brahmbhatt
Title: Chief Executive Officer

CARRIOX CAPITAL II LLC

By: _____
Name: Bankim Brahmbhatt
Title: Chief Executive Officer

8