**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>Broadband Telecom, Inc. et al.,[1]<br><br>　　　　　　　Debtor. | Chapter 11<br><br>Case No. 25-73095 (AST)<br><br>(Joint Administration Requested) |

### DECLARATION OF JOHN D. BAUMGARTNER, CHIEF RESTRUCTURING OFFICER IN ACCORDANCE WITH RULE 1007 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND LOCAL RULE 1007-4

STATE OF NEW YORK　　)
　　　　　　　　　　　　) ss:
COUNTY OF NEW YORK　)

John D. Baumgartner, being duly sworn, deposes and states, as follows:

1.　　　I am the proposed Chief Restructuring Officer ("CRO") of Broadband Telecom, Inc. ("Broadband Telecom"), Bridgevoice, Inc. ("Bridgevoice"), BB Servicer LLC ("BB Servicer" and together with Broadband Telecom and Bridgevoice, the "BB Debtors") Carriox Towercap, LLC ("Carriox Towercap"), and Carriox Telecap LLC ("Carriox Telecap" and together with Carriox Towercap, the "Carriox Debtors"), the above captioned debtors and debtors in possession (collectively referred to as the "Debtors" and individually, a "Debtor"), each of which has filed a voluntary Chapter 11 petition on August 12, 2025 (the "Petition Date").

2.　　　I have reviewed the Petitions and all documents filed in connection therewith and I am familiar with the facts alleged and relief requested therein.  Except as indicated, all facts set forth in this Declaration are based upon: (i) personal knowledge; (ii) information supplied to me

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are: Broadband Telecom, Inc. (0930), Bridgevoice, Inc. (9499), BB Capital SPV, LLC (9947), Carriox Capital II LLC (0514), BB Servicer LLC (3400), Carriox Towercap, LLC (1520), Carriox Telecap LLC (4403).

1

by others within the Debtors and professionals retained to provide advice for those affairs; (iii) my review of relevant documents; and (iv) my opinion based upon my experience and knowledge with respect to the Debtors' operations and financial condition.

3.      My analysis of the Debtors' books and records and my effort to independently verify information contained therein is ongoing.  As such, certain of the information contained herein is based solely upon the Debtors' unverified books and records.

4.      I submit this affidavit (the "Affidavit") in accordance with Local Bankruptcy Rule ("L.B.R.") 1007-4, on behalf of the Debtors in connection with its voluntary Chapter 11 petitions (the "Petition(s)") filed contemporaneously or nearly contemporaneously herewith.

5.      There are no other or prior bankruptcy cases filed by or against the Debtors.  No committee of unsecured creditors was organized prior to the order for relief in the Debtors' Chapter 11 cases.

6.      A copy of the board or member resolutions authorizing the Chapter 11 filings is attached to each of the Petitions and incorporated by reference herein.  Unless otherwise indicated, all financial information contained herein is presented on an estimated and unaudited basis.

7.      Immediately prior to the Petition Date, I was retained to perform the functions and hold the title of the Chief Restructuring Officer of the Debtors.  In my capacity as CRO, I am tasked with day-to-day management of the Debtors, monitoring and enforcing any relationship between the Debtors and their affiliates, and will assist in the formulation, preparation, and consummation of a plan of reorganization, and performing such other duties customary to a chief restructuring officer.

## <u>OVERVIEW OF THE DEBTORS</u>

I.       <u>Corporate Structure and Nature of Operations</u>

A.       **The BB Debtors.**

8.       Broadband Telecom and Bridgevoice each own 50% of the equity interests in BB Capital SPV, LLC ("<u>BB Capital</u>").  BB Capital's main operational focus is to hold loans and provide factoring services to Broadband Telecom and Bridgevoice.

9.       Broadband Telecom and Bridgevoice are wholly owned subsidiaries of BB Carrier LLC (the "<u>BB Carrier</u>"), and were incorporated under the laws of the state of California and Delaware on March 14, 2005 and August 25, 2008, respectively.

10.       Prior to the Petition Date, Broadband Telecom and Bridgevoice provided voice termination services across the world. Operations mainly consisted of a wholesale trading business in which originating telecommunication carriers are interconnected via Voice over Internet Protocol ("<u>VOIP</u>") in which the traffic is routed over the Broadband Telecom and Bridgevoice networks to local service providers and telecommunication carriers in the destination countries with whom they have established agreements to manage the completion or termination of calls. Upon providing services, Broadband Telecom and Bridgevoice invoiced their customers and thereby generated receivables.  BB Capital purchased the receivables of Broadband Telecom and Bridgevoice, thereby providing Broadband Telecom and Bridgevoice with working capital.

11.       BB Servicer is a wholly owned subsidiary of BB Carrier and was organized under the laws of the state of Delaware.  BB Servicer is a servicer for Broadband Telecom and Bridgevoice.

**B.**         **The Carriox Debtors**

12.      Carriox Telecap and Carriox Towercap are wholly owned subsidiaries of Carriox Holding LLC ("Carriox Holding"), and were incorporated under the laws of the state of Delaware in November 2020.  Prior to the Petition Date, Carriox Telecap and Carriox Towercap provided factoring services to the wholesale VoIP carrier industry, SMS carriers, and cell tower infrastructure companies (the "Carriox Factoring Clients") by purchasing from the Carriox Factoring Clients, at a discount, the receivables the Carriox Factoring Clients generate by providing telecom services to their customers.  Carriox Telecap and Carriox Towercap, in turn, sold the receivables they purchase from the Carriox Factoring Clients to Carriox Capital II LLC ("Carriox Capital" and together with BB Capital, the "SPVs"), which is also a wholly owned subsidiary of Carriox Holding.

**II.**    **Liabilities**

**A.**         **Secured Obligations**

13.      BB Capital and Carriox Capital, as non-debtor Borrower[2], (ii) Bridgevoice and Broadband Telecom, as Receivable Generators, (iii) BB Servicer, (iv) Carriox Telecap and Carriox Towercap, as Factors, and CC Servicers, (v) Alter Domus LLC, as  administrative and collateral agent ("Agent"), and (vi) EAVF.SLF CC Leverage SPV LLC; EAVF/SLF BB Leverage SPV, LLC, and AVF III US Aggregator, L.P. (collectively, the "Lenders") entered into that certain Credit Agreement dated as of August 6, 2024 (the "Credit Agreement") providing for a credit

---

[2]   Capitalized terms not otherwise defined shall have the meanings ascribed to them in the applicable Credit Agreement or Credit Document or the complaint in the DE Chancery Court Action (defined below).

facility on the terms and conditions provided therein. [3]  Each of the Debtors has jointly and severally guaranteed the due and punctual performance of all Receivables Generator Obligations and Servicer obligations pursuant to the Credit Agreement and related documentation.  To secure their obligations under the Credit Agreement, certain of the Debtors granted to Agent, for the benefit of the Lenders, a security interest in substantially all of their assets pursuant to that certain Pledge and Security Agreement, dated as of August 6, 2024 (the "<u>Pledge and Security Agreement</u>").

14.     Bankim Brahmbhatt ("<u>Brahmbhatt</u>"), the Debtors' principal, signed a certain "Bad Acts Guaranty, " dated as of August 6, 2024, to guarantee the obligations under the Credit Agreement.  On August 12, 2025, the Agent commenced an action in the Supreme Court, New York, Index No. 654771/2025, to enforce the Bad Acts Guaranty. On the Petition Date, Brahmbhatt commenced a case under Chapter 11 of the Bankruptcy Code in this Court, Case No. 25-73100.

15.     On July 21, 2025, the Lenders sent a notice pursuant to the Credit Agreement declaring that one or more Events of Default had occurred under Section 8.1 of the Credit Agreement and that one or more Grantor Events of Default had occurred under the terms of the Pledge and Security Agreement; and

16.     On July 23, 2025, Agent gave notice of the occurrence of Events of Default, declared the outstanding Obligations under the Credit Agreement to be due and payable, and demanded immediate payment thereof; and

---

[3] This is an incomplete summary of the terms of the Credit Agreement.  The full and complete terms are set forth in the Credit Agreement and related agreements.  These facts are for explanatory purposes only, and all rights and defenses to claims under the Credit Agreement are reserved

17.     On July 24, 2025, the Lenders commenced an action (the "DE Chancery Court Action") against the SPVs, the Debtors, Brahmbhatt, and Jigar Bhatt (collectively, the "Defendants") in the Court of Chancery of the State of Delaware ("Delaware Chancery Court").

18.     On August 8, 2025, the Delaware Chancery Court issued a temporary restraining order prohibiting the Debtors and SPVs from, among other things, (i) transferring assets, (ii) purchasing receivables and (iii) transacting any business with a value in excess of $5,000, absent consent from the Lenders.

19.     The Debtors filed these cases prior to responding to the Lenders' complaint in the DE Chancery Court Action.

    B.     Unsecured Obligations

       i.          Priority Claims Held By Employees

20.     The Debtors' payroll system is set up to pay employees bi-weekly in arrears.  As such, on the Petition Date, the Debtors employees were owed earned but unpaid wages and benefits for the period from August 1, 2025 through the Petition Date.

21.     The Debtors and their professionals are in the process of determining the aggregate amount of pre-petition salary, wages and benefits that are owed as of the Petition Date and will include such information it their schedules of assets and liabilities.

       ii.          General Unsecured Obligations

22.     Upon information and belief, the Debtors' general unsecured creditors are comprised primarily of trade creditors.

23.     Upon information and belief, the aggregate amount of Bridgevoice's accounts payable in the aggregate amount of approximately $36,178,699, inclusive of $35,831,088.90 owed to Bankai  International Pvt. Ltd., a potential insider.

6

24.    Upon information and belief, the aggregate amount of Broadband Telecom's accounts payable is approximately $29,852,981, inclusive of $27,311,385.97 owed to Bankai International Pvt. Ltd.

### III.    Assets

25.    The Debtors' primary assets are accounts receivable and cash.  The Debtors' goal in these cases is to collect accounts receivable for the benefit of their creditors and to preserve the value of the Debtors' businesses while using the breathing spell afforded by the automatic stay to reorganize their business affairs.  I am not aware of any property of the Debtors in the custody of any public officer, receiver, trustee, pledge, assignee of rents, liquidators, secured creditors or agents of such person.

26.    The Debtors do not have any publicly held shares, debentures, or other securities.

### IV.    Circumstances Leading to the Filing of the Debtors' Chapter 11 Case

27.    As noted above, on July 24, 2025, the DE Chancery Court Action was commenced and on August 8, 2025, the Delaware Chancery Court issued the TRO, thereby effectively freezing the Debtor's operations.

28.    The Debtors have commenced these cases to provide an opportunity to reorganize their businesses in the face of significant liquidity issues and the threat of pending litigation with the Lenders, who, as noted above, obtained entry of a temporary restraining order in the DE Chancery Court Action, which effectively froze the Debtors' operations, and who have also sought the appointment of a receiver in the DE Chancery Court Action

29.    The Debtors desire to use the breathing spell afforded by the commencement of the cases to stabilize their operations and build creditor confidence with the guidance, management, oversight, and outreach of a CRO.  The Debtors seek to reorganize their business while preserving

7

the significant value of years-worth of customer development in the telecom industry for the benefit of their creditors. The Debtors desire to use anticipated revenue streams to fund continued operations in the ordinary course of their business, which will provide an opportunity to restructure their secured and unsecured obligations cooperatively their creditors through a plan process.

**V.**    **<u>Information Required by Local Rule 1007-4</u>**

30.    Local Bankruptcy Rule 1007-4 requires certain information related to the Debtors, which is set forth below.

a.    **No Small Business Debtors or Single Asset Real Estate Cases**

31.    In accordance with LBR 1007-4(a)(i), I am advised by counsel that the Debtors do not qualify as a "small business debtor" within the meaning of section 101(51D) of the Bankruptcy Code and in accordance with LBR 1007-4(a)(ii), the Debtors are not "single asset real estate" cases within the meaning of section 101(51B) of the Bankruptcy Code.

b.    **Nature of the Debtors' Businesses, Events Leading to Bankruptcy**

32.    The information requested in LBR 1007-4(a)(iii) and 1007-4(a)(iv) is set forth in Sections II through IV above.

c.    **No Creditors' Committee**

33.    In accordance with LBR 1007-4(a)(v), to the best of my knowledge, prior to the Petition Date no creditors' committee has been formed.  As of the date of this Declaration, no committee of unsecured creditors has been organized.

d.    **Holders of each of the Debtor's Thirty Largest Unsecured Claims**

34.    In accordance with LBR 1007-4(a)(vi), a consolidated list setting forth the Debtor's thirty (30) largest unsecured creditors, excluding those persons who constitute "insiders" under Bankruptcy Code Section 101(31) of the Debtors and commonly owned entities, is attached as

**Exhibit A**.  As required by LBR 1007-4(a)(vi), Exhibit A includes the creditors' names, address, amount of each claim, and an indication of whether the claims are contingent, unliquidated, or disputed.

### e.  Holders of each of the Debtor's Secured Claims

35.    In accordance with LBR 1007-4(a)(vii), a list setting forth each of the Debtors' secured creditors is annexed hereto as **Exhibit B**.[4]  As required by LBR 1007-4(a)(vi), Exhibit B includes the creditors' names, addresses, amount of each claim, a description and an estimate of the value of the collateral securing the claim, and whether the claim or lien is disputed.

### f.  Summary of the Debtors' Assets and Liabilities

36.    As required by LBR 1007-4(a)(viii) a summary of the Debtors' assets and liabilities is attached as **Exhibit C**.  I am continuing to analyze the Debtors' books and records and have not had the ability to independently verify this information.

### g.  No Publicly Held Stock

37.    In accordance with LBR 1007-4(a)(ix), the Debtors do not have any publicly held shares.

### h.  Property Held by Others

38.    As required by LBR 1007-4(a)(x), to the best of my knowledge, there is no property of the Debtors in the custody of any custodian, public officer, receiver, trustee, pledgee, assignee of rents, liquidator, secured creditor or agents of any such person, other (a) than $66,627.65 currently being held for the benefit of Bridgevoice by PayPal in an account ending in 2GEAN, and

---

[4] While LBR 1007-4(a)(vi) only requires the Debtor to list the top five (5) secured creditors, the Debtors have listed all of their secured creditors.

$3,718.34 currently being held for the benefit of Broadband Telecom by PayPal in an account ending in F7W5U.

i.  **Debtors' Premises**

39.    As required by LBR 1007-4(a)(xi), **Exhibit D,** contains a list of each of the premises owned, leased, or held under any other arrangement from which the Debtors operated their businesses.

j.  **Location of the Debtors' Assets and Books and Records**

40.    Pursuant to LBR 1007-4(a)(xii), the Debtors' primary assets are accounts receivable, which are owed by entities both within and outside the territorial limits of the United States.  The Debtor's electronic books and records are in the custody of Bankai Infotech Limited, 8,GF, Gujarat, India.   I am in the process of trying to obtain copies of relevant books and records.

k.  **Pending or Threatened Actions**

41.    Pursuant to LBR 1007-4(a)(xiii), **Exhibit E** contains a schedule identifying the nature and present status of pending or threatened actions against the Debtors.

l.  **Debtors' Officers**

42.    In accordance with LBR 1007-4(a)(xiv), the Debtors' officers are as follows.

| Name | Title | Tenure | Responsibility |
|---|---|---|---|
| **Robert Warshauer** | Independent Director or Independent Manager | August 21, 2025 | Manage day-to-day operations of the Debtors |
| **John D. Baumgartner** | Chief Restructuring Officer | August 11, 2025 | Assist Mr. Warshauer in managing the day-to-day operations of the Debtors, as delegated by Mr. Warshauer |

**m. Payroll to Employees**

43.     Pursuant to LBR 1007-4(a)(xv), the Debtors do not anticipate that payroll will be paid to employees in the first 30 days after the Petition Date.

**n. No Payroll to Officers and Directors; Payroll to Chief Restructuring Officer**

44.     The Debtors have sought Bankruptcy Court approval of their retention of me as CRO on an hourly fee basis and the appointment of Mr. Warshauer as the Debtors Independent Director or Independent Manager for a monthly fee in the amount of $45,000 [ECF Doc. No. 17]. There are no other officers or Directors who will be paid in these Chapter 11 Cases.

**o. Schedule of Receipts and Disbursements**

45.     In accordance with LBR 1007-4(a)(xvii), a schedule of estimated cash receipts and disbursements, net cash gain or loss, and obligations and receivables expected to accrue but remain unpaid after the Petition Date, which was prepared by the Debtors' former management, and which I am still in the process of analyzing is annexed hereto as **Exhibit F**.  I am unable to represent that the information contained in Exhibit F is accurate because my analysis is ongoing.

**p. Insurance Policies**

46.     In accordance with LBR 1007-4(a)(xviii), a schedule of the Debtors' current insurance policies, including the identity of the insurer, policy period and type of insurance for each insurance policy listed, is annexed hereto as **Exhibit G**.

**q. Bank Accounts**

47.     In accordance with LBR 1007-4(a)(xix), a schedule of the Debtors' bank accounts, including the name and address of the banking institution where the accounts are held, the name

on the account, and the nature of the account for each bank account listed, is annexed hereto as **Exhibit H**.

## VI.    The Debtor's Post-Petition Operations

48.    The Debtors intend to continue operating their businesses in the ordinary course under the guidance and management of the Independent Director and CRO pursuant to a budget that the Debtors will seek to negotiate with the Lenders.

## VII.    Bankruptcy Reorganization Strategy

49.    Through these proceedings, the Debtors will seek to develop a plan of reorganization to restructure their existing credit facilities, while also providing for distribution on account of allowed claims of unsecured creditors.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated:  September 9, 2025

John D. Baumgartner, solely in his capacity
as Chief Restructuring Officer

**EXHIBIT A**

## EXHIBIT B

### Secured Claims Against Each Debtor

Pursuant to LBR 1007-4(a)(vii), the following lists each of the Debtors' secured claims. The information contained herein shall not constitute an admission of liability by, nor is it binding on, the Debtors. The Debtors reserve all rights to assert that any debt or claim listed herein is a disputed claim or debt, and to challenge the priority, nature, amount, or status of any such claim or debt. The descriptions of the collateral securing the underlying obligations are intended only as brief summaries. In the event of any inconsistencies between the summaries set forth below and the respective corporate and legal documents relating to such obligations, the descriptions in the corporate and legal documents shall control.

| No. | Name of Creditor | Address | Approximate Amount Outstanding on Loan(s) | Description and Value of Collateral | Contingent, Unliquidated, or Disputed |
|---|---|---|---|---|---|
| 1. | Alter Domus (US) LLC, as Collateral Agent | 225 West Washington Street, Chicago, IL 60606; Attn: ABL Department and Legal Department | | Substantially all Assets of Debtors | Contingent, Unliquidated and Disputed |
| 2. | EAVF/SLF BB Leverage SPV, LLC | Susheel Kirpalani Quinn Emanuel Urquhart & Sullivan, LLP 295 Fifth Avenue New York, NY 10016 212-849-7000 Main Office Number susheelkirpalani@quinnemanuel.com | | Substantially all Assets of Debtors | Contingent, Unliquidated and Disputed |
| 3. | AVF III US Aggregator, LLC | Susheel Kirpalani Quinn Emanuel Urquhart & Sullivan, LLP 295 Fifth Avenue New York, NY 10016 212-849-7000 Main Office Number susheelkirpalani@quinnemanuel.com | | Substantially all Assets of Debtors | Contingent, Unliquidated and Disputed |
| 4. | EAVF/SLF CC Leverage SPV, LLC | Susheel Kirpalani Quinn Emanuel Urquhart & Sullivan, LLP 295 Fifth Avenue New York, NY 10016 212-849-7000 Main Office Number susheelkirpalani@quinnemanuel.com | | Substantially all Assets of Debtors | Contingent, Unliquidated and Disputed |
| 5. | Dell Financial Services, LLC | One Dell Way, Round Rock, TX 78682 | Unknown | Computer Equipment | Contingent, Unliquidated and Disputed |

## **EXHIBIT C**

## **Summary of Assets and Liabilities**

The Debtors have sought an extension of time to prepare and file their schedules of assets and liabilities and anticipate updating this exhibit at the time their schedules are completed.

## **EXHIBIT D**

### **List of Leased Premises**

| Address |
| --- |
| 100 Quentin Roosevelt Blvd, Suite 503 Garden City - NY 11530 |

## **EXHIBIT E**

### **Litigation**

Pursuant to LBR 1007-4(a)(xiii), the following is a list of the nature and present status of each known action or proceeding, pending or threatened against the Debtors. This list reflects all actions or proceedings currently pending against the Debtors which they were able to identify as of the date of this Declaration; however, the Debtors reserve the right, if necessary, to supplement this list in the corresponding Schedules to be filed by the Debtors in these chapter 11 cases.

| Plaintiffs | Matter Name | Jurisdiction | Case Number | Type | Status |
|---|---|---|---|---|---|
| EAVF/SLF CC Leverage SPV, LLC, EAVF/SLF BB Leverage SPV, LLC, and AVF III US Aggregator, LLC | EAVF/SLF CC Leverage SPV, LLC, et al, v. BB Capital SPV, LLC | Court of Chancery of the State of Delaware | 2025-0859-BWD | Fraud and Fraudulent Inducement; Breach of Contract; Unjust Enrichment; Civil Conspiracy | Debtors have not yet joined issue |

## EXHIBIT F

### Schedule of Receipts and Disbursements

Pursuant to LBR 1007-4(a)(xvii), the following provides the estimated aggregated cash receipts and disbursements, net cash gain or loss, and obligations and receivables expected to accrue but remaining for the 30-day period following the Petition Date.

### Broadband Telecom, Inc.

| | |
|---|---|
| Cash Receipts | $2,850,000 |
| Cash Disbursements | $0.00 |
| Net Cash Gain (Loss) | $2,250,000 |
| Unpaid Obligations (excluding professional fees)[5] | $1,473,000 |
| Unpaid Receivables (excluding professional fees)[6] | $10,326,000 |

---

[5] I am in the process of vetting all of the information contained herein, which was provided by the Debtor's former management.  I do not yet have sufficient information to  confirm the veracity of the Debtors' projections.

[6] I am in the process of vetting all of the information contained herein, which was provided by the Debtor's former management.  I do not yet have sufficient information to  confirm the veracity of the Debtors' projections.

### Bridgevoice, Inc.

| Cash Receipts | $563,213.34 |
|---|---|
| Cash Disbursements | $0.00 |
| Net Cash Gain (Loss) | $563,213.34 |
| Unpaid Obligations (excluding professional fees)[7] | $194,000 |
| Unpaid Receivables (excluding professional fees)[8] | $2,893,000 |

### BB Servicer LLC

| Cash Receipts | $0.00 |
|---|---|
| Cash Disbursements | $0.00 |
| Net Cash Gain (Loss) | $0.00 |
| Unpaid Obligations (excluding professional fees) | $0.00 |
| Unpaid Receivables (excluding professional fees) | $0.00 |

### Carriox Telecap LLC

| Cash Receipts | $0.00 |
|---|---|
| Cash Disbursements | $0.00 |
| Net Cash Gain (Loss) | $0.00 |

---

[7] I am in the process of vetting all of the information contained herein, which was provided by the Debtor's former management.  I do not yet have sufficient information to  confirm the veracity of the Debtors' projections.

[8] I am in the process of vetting all of the information contained herein, which was provided by the Debtor's former management.  I do not yet have sufficient information to  confirm the veracity of the Debtors' projections.

| Unpaid Obligations (excluding professional fees) | $0.00 |
|---|---|
| Unpaid Receivables (excluding professional fees) | $0.00 |

## Carriox Towercap LLC

| Cash Receipts | $0.00 |
|---|---|
| Cash Disbursements | $0.00 |
| Net Cash Gain (Loss) | $0.00 |
| Unpaid Obligations (excluding professional fees) | $0.00 |
| Unpaid Receivables (excluding professional fees) | $0.00 |

## EXHIBIT G

## Insurance Policies

### Broadband Telecom, Inc.

| Insurer and Policy Number | Type of Insurance Coverage | Policy Period |
|---|---|---|
| Travelers Property Casualty Company of America – ZLP-61N83882-25-15 | Property Commercial General Liability Employee Benefits Liability | 1/10/2025-1/10/2026 |
| Travelers Property Casualty Company of America – QT-660-7809N727-TIL-25 | Commercial Insurance | 7/10/2025-7/10/2026 |
| Euler Hermes North America - 5128411 | Corporate Advantage Risk Policy | 9/1/2024-8/31/2025 |

### Bridgevoice, Inc.

| Insurer | Insurance Coverage | Policy Period |
|---|---|---|
| Travelers Property Casualty Company of America – ZLP-61N83882-25-15 | Property Commercial General Liability Employee Benefits Liability | 1/10/2025-1/10/2026 |
| Travelers Property Casualty Company of America – QT-660-7809N727-TIL-25 | Commercial Insurance | 7/10/2025-7/10/2026 |
| Euler Hermes North America - 5128417 | Corporate Advantage Risk Policy | 9/1/2024-8/31/2025 |

### BB Servicer, LLC

| Insurer | Insurance Coverage | Policy Period |
|---|---|---|
| None | None | None |

### Carriox Telecap, LLC

| Insurer | Insurance Coverage | Policy Period |
|---|---|---|
| None | None | None |

### Carriox Towercap, LLC

| Insurer | Insurance Coverage | Policy Period |
|---|---|---|
| None | None | None |

## EXHIBIT H

### Bank Accounts

| Bank | Name on Account | Account Number | Amount as of August 6, 2025 |
|---|---|---|---|
| HSBC Bank, P.O. Box 1393, Buffalo, NY 14240 | Broadband Telecom, Inc. | *****8763 | $1,832,913.19 |
| HSBC Bank, P.O. Box 1393, Buffalo, NY 14240 | Broadband Telecom, Inc. | *****8755 | $15,486.97 |
| HSBC Bank, P.O. Box 1393, Buffalo, NY 14240 | Broadband Telecom, Inc. | *****9839 | $18,914.00 |
| JP Morgan Chase Bank, N.A. – London Branch, 25 Bank Street, London E145JP | Broadband Telecom, Inc. | ******3165 | $342,183.15 |
| JP Morgan Chase Bank, N.A. PO Box 182051, Columbus OH 43218 | Broadband Telecom, Inc. | *********** 8021 | $3,165.34 |
| JP Morgan Chase Bank, N.A. PO Box 182051, Columbus OH 43218 | Broadband Telecom, Inc. | ***********8013 | $17,547.92 |
| HSBC Bank, P.O. Box 1393, Buffalo, NY 14240 | BB Servicer, LLC | *****9375 | $4,080.00 |
| HSBC Bank, P.O. Box 1393, Buffalo, NY 14240 | Bridgevoice, Inc. | *****3513 | $50,000.00 |
| HSBC Bank, P.O. Box 1393, Buffalo, NY 14240 | Bridgevoice, Inc. | *****8780 | $244,373.24 |
| HSBC Bank, P.O. Box 1393, Buffalo, NY 14240 | Bridgevoice, Inc. | *****3785 | $340,707.19 |
| HSBC Bank, P.O. Box 1393, Buffalo, NY 14240 | Bridgevoice, Inc. | *****8771 | $0.00 |
| JP Morgan Chase Bank, N.A. PO Box 182051, | Bridgevoice, Inc. | ***********2206 | $67,358.24 |

| | | | |
|---|---|---|---|
| Columbus OH 43218 | | | |
| JP Morgan Chase Bank, N.A. PO Box 182051, Columbus OH 43218 | Bridgevoice, Inc. | ***********8690 | $3,062.35 |
| JP Morgan Chase Bank, N.A. PO Box 182051, Columbus OH 43218 | Bridgevoice, Inc. | ***********2253 | $7,967.98 |
| JP Morgan Chase Bank, N.A. PO Box 182051, Columbus OH 43218 | Carriox Telecap, LLC | ***********5493 | $9,801.42 |