**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, NY 10036-7203
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Tracy L. Klestadt
John E. Jureller, Jr.
Brendan M. Scott
Andrew C. Brown
Kevin B. Collins

*Proposed Counsel to the Debtors and Debtors
   in Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
In re                                            :
                                                 :                Chapter 11
                                                 :
BROADBAND TELECOM, INC., *et al.*,[1]           :                Case No. 25-73095 (AST)
                                                 :
                                                 :                (Joint Administration Requested)
                      Debtors.                   :
------------------------------------------------------------x

**DECLARATION OF JOHN D. BAUMGARTNER, CHIEF RESTRUCTURING**
**OFFICER OF THE DEBTORS, (I) TO REPORT ON STATUS**
**OF DEBTORS' OPERATIONS, AND (II) AS PRELIMINARY RESPONSE**
**IN OPPOSITION TO THE UNITED STATES TRUSTEE'S OBJECTION**
**TO THE DEBTORS' *EX PARTE* MOTION FOR ACCESS AND IN SUPPORT OF**
**MOTION SEEKING ENTRY OF AN ORDER UNDER 11 U.S.C. §1104 DIRECTING**
<u>**THE APPOINTMENT OF A CHAPTER 11 TRUSTEE**</u>

John D. Baumgartner, under penalties of perjury, declares and states as follows:

1. I am the proposed Chief Restructuring Officer ("<u>CRO</u>") of Broadband Telecom, Inc. ("<u>Broadband Telecom</u>"), Bridgevoice, Inc. ("<u>Bridgevoice</u>"), BB Servicer LLC ("<u>BB

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: (1) BB Servicer, LLC (3400); (2) Carriox Telecap LLC (4403); (3) Carriox Towercap LLC (1520); (4) Bridgevoice, Inc. (9499); and (5) Broadband Telecom, Inc. (0930). The location of the Debtor Broadband Telecom, Inc.'s principal place of business is 100 Quintin Roosevelt Blvd, Suite 503, Garden City, New York 11530, and the Debtors' service addresses in these Chapter 11 cases is the same.

1

Servicer", and together with Broadband Telecom and Bridgevoice, the "BB Debtors"), Carriox Towercap, LLC ("Carriox Towercap"), and Carriox Telecap LLC ("Carriox Telecap" and together with Carriox Towercap, the "Carriox Debtors"), the above captioned debtors and debtors in possession (collectively referred to as the "Debtors", and each individually, a "Debtor"), each of which filed a voluntary Chapter 11 petition on August 12, 2025 (the "Petition Date").

2. I am submitting this declaration ("Declaration") (i) to provide a status report on the Debtors' operations since my appointment on August 12, 2025 (as described more fully below), and (ii) as a preliminary response in opposition to the *United States Trustee's Objection to the Debtors' Ex Parte Motion for Access And In Support of Motion Seeking Entry of an Order Under 11 U.S.C. §1104 Directing Appointment of a Chapter 11 Trustee* (the "UST Motion") [Docket No. 34][2].

3. I have previously submitted a declaration, in accordance with Local Bankruptcy Rule ("L.B.R.") 1007-4 (the "First Day Declaration")[3] [Docket No. 36], on behalf of the Debtors in connection with their voluntary Chapter 11 petitions (the "Petitions").

4. Except as indicated, all facts set forth in this Declaration are based upon: (i) personal knowledge; (ii) information supplied to me by others within the Debtors and its professionals; (iii) my review of relevant documents; and (iv) my opinion based upon my experience and knowledge with respect to the Debtors' operations and financial condition.

5. My analysis of the Debtors' books and records and my effort to independently verify information contained therein is ongoing. As such, certain of the information contained herein is based solely upon the Debtors' unverified books and records.

---

[2] Unless otherwise indicated, all references to "Docket No." included herein are references to the docket of *In re Broadband Telecom, Inc.*, Case No. 25-73095 (AST).
[3] Capitalized terms used but not immediately defined herein shall have the meanings assigned to them elsewhere in the First Day Declaration or the UST Motion, as applicable.

6.     On August 22, 2025, the Debtors filed that certain *Debtors' Motion to Approve (I) Retention and Employment of Robert Warshauer as Independent Director of the Debtors Nunc Pro Tunc to August 21, 2025; (II) Retention and Employment of John D. Baumgartner as Chief Restructuring Officer of the Debtors, Nunc Pro Tunc to the Petition Dates; and (III) Approving and So Ordering Proposed Stipulation Setting Forth the Terms of an Agreement Between the Debtors, SPVs, Bankim Brahmbhatt, Agent, and Lenders* (the "Stipulation And CRO Motion") [Docket No. 17]. The Stipulation And CRO Motion is scheduled for interim hearing on September 10, 2025, with final hearing to be scheduled thereafter on notice.

7.     As set forth in the Stipulation And CRO Motion, in an effort to get these Chapter 11 cases (collectively, the "Chapter 11 Cases") on the proper footing and in the spirit of working cooperatively with one of their largest stakeholders, the Debtors met and conferred with the Lenders in an effort to avoid the filing by the Lenders of a motion seeking the appointment of Chapter 11 trustee to administer these Chapter 11 Cases. After substantial arms-length negotiations, the parties agreed to the terms of the Stipulation, which provides, *inter alia*, for the appointment of Robert Warshauer as the Independent Manager or Independent Director of the Debtors' as applicable, and provides for my retention as CRO of the Debtors.

8.     The Stipulation provides in material part as follows:

   a) Subject to approval by the Bankruptcy Court, the Debtors, the SPVs, and Brahmbhatt, in his capacity as a member, manager or officer of the Debtors and SPVs only, agree to take all actions necessary or appropriate to cause the election or appointment of Robert Warshauer ("Independent Director") to serve as the sole Director or Manager, as applicable, of each of the Debtors and SPVs, subject to the terms set forth herein. For avoidance of doubt, the Lenders and the Agent explicitly consent to the termination of the existing independent manager of the SPVs and the replacement of such independent manager with the Independent Director, and such other consents as necessary to effectuate such provisions hereunder, as applicable;

   b) By Thursday, August 21, 2025 at 12:00 noon (Eastern Time), and

notwithstanding that the Effective Date may not have occurred, the Debtors' members or shareholders, as applicable, through, Brahmbhatt, in his capacity as manager or managing member the Debtors' members or shareholders, shall duly execute corporate resolutions and/or written actions of shareholders or members (the "Debtors' Resolutions") which shall provide that:

   i. the Debtors appoint Independent Director to serve as the sole Director or Manager, as applicable, of each of the Debtors, subject to the terms of an independent manager agreement satisfactory to the Agent and the Lenders ("Independent Director Agreement"), which shall include, *inter alia*, full authority to manage the Debtors, administer the Debtors' Chapter 11 Cases, pursue and consummate the sale of the assets of the Debtors, direct counsel and professionals retained by the Debtors, investigate and determine whether to pursue, and pursue, causes of action of the Debtors, and otherwise have the rights, duties and obligations of a debtor in possession in the Chapter 11 cases, together with the right to delegate authority to the CRO (as defined below);

   ii. the Debtors ratify the engagement of Klestadt Winters Jureller Southard & Stevens, LLP as counsel to the Debtors, subject to approval of the Bankruptcy Court in accordance with sections 327 and 330 of the Bankruptcy Code;

   iii. the Debtors ratify the engagement of John D. Baumgartner of Getzler Henrich & Associates LLC as the Chief Restructuring Officer ("CRO") in accordance with sections 327 and 330 of the Bankruptcy Code subject to approval of the Bankruptcy Court; and

   iv. the Debtors ratify the engagement of Getzler Henrich & Associates LLC as the financial advisor to the Debtors ("FA"), subject to approval of the Bankruptcy Court in accordance with sections 327 and 330 of the Bankruptcy Code.

By executing this Stipulation, the signatories to the Debtors' Resolutions agree that they shall take no action to revoke or modify the Debtors' Resolutions, nor take any corporate action on behalf of the Debtors contrary to the provisions thereof.

c) By Thursday, August 21, 2025 at 12:00 noon (Eastern Time), and notwithstanding that the Effective Date may not have occurred, the SPVs' members, through Brahmbhatt, in his capacity as Chief Executive Officer or managing member of the SPVs' members, as applicable, shall duly execute corporate resolutions and/or written actions of shareholders or members (the "SPV Resolutions", and together with the Debtors' Resolutions, the "Resolutions") which shall provide that:

      i.      the SPVs appoint Independent Director to serve as the sole Manager for each of the SPVs, subject to the terms of an Independent Director Agreement satisfactory to the Agent and the Lenders, which shall include, *inter alia*, including, without limitation, (x) that the SPVs will grant the Independent Director sole authority to file petitions for relief with the Bankruptcy Court and (y) for the rights, powers and obligations set forth above with respect to the Debtors' Resolutions; and

      ii.     the SPVs (a) shall engage Klestadt Winters Jureller Southard & Stevens, LLP as counsel to the SPVs effective immediately; (b) shall engage John D. Baumgartner of Getzler Henrich & Associates LLC as the CRO for the SPVs, effective immediately; and (c) shall employ Getzler Henrich & Associates LLC as the financial advisor to the SPVs, effective immediately.

By executing this Stipulation, the signatories to the SPV Resolutions agree that they shall take no action to revoke or modify the SPV Resolutions, nor take any corporate action on behalf of the SPVs contrary to the provisions thereof.

d) The CRO of the Debtors and the SPVs shall act at the sole direction of the Independent Director as set forth in the Independent Director Agreement. The CRO may only be removed for "Cause". "Cause" shall mean any of the following with respect to the CRO: (a) a conviction for, or entering a plea of *nolo contendere* to, a charge of a felony (other than any motor vehicle offense); (b) fraud; (c) misappropriation of funds or property of the Debtors or SPVs; (d) any act of willful misconduct or gross negligence that materially harms the Debtors or the SPVs, or (e) by order of the Bankruptcy Court after notice and a hearing, in the event of fraud, dishonesty, incompetence, or gross mismanagement of the Debtors or any other basis constituting grounds for the appointment of a Chapter 11 trustee.

e) Upon entry of this Stipulation by the Bankruptcy Court, the CRO shall, among other responsibilities and actions: (i) promptly take all necessary or appropriate actions to secure access to and control over the books and records of the Debtors and the SPVs, including by terminating the access of any present or former officer, director or employee of the Debtors and the SPVs as the CRO may determine; and (iii) as soon as practicable, prepare a workstream plan and 13-week financial projections for the Debtors and the SPVs, which shall be provided to (a) the Independent Director, (b) the Lenders and the Agent, and (c) counsel for the Debtors and Brahmbhatt.

f) The CRO shall provide progress reports to the Independent Director (via Zoom meetings or other agreed means of communications so determined by the Independent Director) as reasonably requested by the Independent Director,

      with the participation of the Lenders and the Agent at the Independent Director's discretion. In addition, the CRO shall provide Brahmbhatt with progress reports regarding the status of operations and business projections upon his reasonable request and as may be appropriate under the circumstances.

    g) The Independent Director, in consultation with the CRO and the SPVs' professionals, shall promptly take into consideration the filing of chapter 11 bankruptcy cases by the SPVs and provide status reports to the Lenders and the Agent and counsel to Brahmbhatt with respect to any decisions thereon.

9. The Lenders and the Agent also agreed to negotiate in good faith with the Debtors, the SPVs, the Independent Director and the CRO regarding the terms of a stipulation authorizing the use of the Lenders' and the Agent's cash collateral, in accordance with Bankruptcy Code Section 363, in the Chapter 11 Cases by the Debtors, and in any bankruptcy cases filed by the SPVs, which may provide for, among other things, use of cash collateral to pay the approved professional fees of the Debtors and the SPVs, the compensation of the Independent Director and CRO, and necessary payroll and other expense of the administration of the estates of the Debtors and, if applicable, the SPVs, subject to an agreed budget, and to pay for reasonable premiums for appropriate directors and officers insurance for the Debtors and for the SPVs if they file bankruptcy cases.

10. As contemplated by the Stipulation, on August 21, 2025, the applicable members, managers, and officers of the Debtors' and the SPVs' executed written consents and resolutions authorizing the appointment of Mr. Warshauer and myself in our respective roles. Copies of the executed written consents are annexed to the Stipulation and CRO Motion collectively as <u>Exhibit "B"</u>.

11. In my role as CRO, it was contemplated that I would provide such turnaround management services as the Debtors, through the Independent Director, and I deem appropriate, including, but not limited to, the following:

    a) Assess, monitor, and manage operations and recommend and implement the restructuring or wind down of operations as appropriate;

    b) Oversee any Section 363 sale process;

    c) Assist with the preparation of Court motions as requested by counsel;

    d) Assist with compliance with the reporting requirements of the Bankruptcy Code, the Bankruptcy Rules, and local rules, including preparation of reports, monthly operating statements, and schedules;

    e) Assist with the preparation of business plans and financial projections, and analysis of alternative operating scenarios;

    f) Participate in Court hearings and, if necessary, provide testimony in connection with any hearings before the Court;

    g) Consult with all other retained parties, secured lender (if any), creditors' committee (if any), and other parties-in-interest;

    h) Assist the Independent Director with the investigation and pursuit of potential causes of action of the Debtors and their respective estates and of the SPVs and, if they become debtors under the Bankruptcy Code, their respective estates;

    i) Assist with the analysis and reconciliation of claims against the Debtors and other bankruptcy avoidance actions;

    j) Manage and control access to the Debtors' bank accounts, including having signatory authority;

    k) Conduct a review and forensic accounting of the Debtors' historic operations and books and records; and

    l) Perform such other tasks as appropriate and as may reasonably be requested by the Debtors' management, independent director or counsel and agreed to by Getzler Henrich.

12. In furtherance of the engagement, I, along with my team at Getzler Henrich & Associates LLC ("Getzler Henrich") began providing services to the Debtors as of August 12, 2025.

## I. Status Update:

13. In my capacity as CRO, I am tasked with day-to-day management of the Debtors, monitoring and enforcing any relationships between the Debtors and their affiliates, assisting in the formulation, preparation, and consummation of a plan of reorganization, and performing such other duties customary to a chief restructuring officer.

14. Prior to the Petition Date, Broadband Telecom and Bridgevoice provided voice termination services across the world. Operations mainly consisted of a wholesale trading business in which originating telecommunication carriers are interconnected via Voice over Internet Protocol ("VOIP") in which the traffic is routed over the Broadband Telecom and Bridgevoice networks to local service providers and telecommunication carriers in the destination countries with whom they have established agreements to manage the completion or termination of calls. Upon providing services, Broadband Telecom and Bridgevoice invoiced their customers and thereby generated receivables. BB Capital purchased the receivables of Broadband Telecom and Bridgevoice, thereby providing Broadband Telecom and Bridgevoice with working capital.

15. Carriox Telecap and Carriox Towercap are wholly owned subsidiaries of Carriox Holding LLC ("Carriox Holding"), and were incorporated under the laws of the state of Delaware ("DE") in November 2020. Prior to the Petition Date, Carriox Telecap and Carriox Towercap provided factoring services to the wholesale VoIP carrier industry, SMS carriers, and cell tower infrastructure companies (the "Carriox Factoring Clients") by purchasing from the Carriox Factoring Clients, at a discount, the receivables the Carriox Factoring Clients generate by providing telecom services to their customers. Carriox Telecap and Carriox Towercap, in turn, sold the receivables they purchase from the Carriox Factoring Clients to Carriox Capital II LLC

("Carriox Capital" and together with BB Capital, the "SPVs"), which is also a wholly owned subsidiary of Carriox Holding.

16. The Debtors operations are mainly based in the United States and India, with its key customers being telecom companies throughout the world.

17. Upon my engagement as CRO, I immediately began to gather information to begin to understand the Debtors' business and operations, their assets and liabilities, and their financial affairs including cash flow, income streams, and debt obligations.

18. Since the commencement date, I have undertaken, *inter alia*, the following actions on behalf of the Debtors:

- Scheduling daily teleconference and videoconference meetings with key personnel of the Debtors and/or their affiliate Bankai Infotech Limited ("Bankai Infotech"). Bankai Infotech is, upon information and belief, an affiliated entity which provides back-office services to the Debtors.

- Holding weekly discussions with the Lenders to discuss all aspects of the business operations, the debt obligations, and the alleged fraud as asserted in the DE Chancery Court Action.

- Holding regular discussions with ongoing management and key personnel, all of which are situated in India. These discussions have involved, among other things, details regarding ongoing operations, employees, business controls, critical vendors and customers, the nature of the Debtors' telecommunication contracts and agreements, financial oversight and projections, an analysis of income streams, cash flow, and contractual obligations.

- Working to gain an understanding of the inter-company relationships and agreements within the Bankai Group of companies.
- Taking steps to access and gain control over the necessary accounting software, IT and network access, and other controls within the business.
- Taking steps to obtain access to and control over the multiple bank accounts held by the Debtors, including obtaining current and historical statements, meeting with bank personnel, and confirming restricted access to the accounts in the short term.
    - I have met with Chase Bank representatives about accessing the accounts. I have had virtual and telephonic conferences with representatives of KeyBank and HSBC about accessing the accounts.
    - My team and I have online access to HSBC's account portal and to JP Morgan Chase's account portal. We are able to monitor account balances and see recent activity into the accounts.
    - The accounts at HSBC, JP Morgan, and Chase are not allowing disbursements. The KeyBank accounts are under control agreements with the loan agent which restricts the Debtors' ability to make disbursements from the accounts.
- Taking steps to obtain access to the Debtors' U.S. offices in Garden City, New York, which steps lead directly to the decision to file the motion to compel the landlord to provide access (the "Access Motion") [Docket No. 29].
- Investigating and reviewing key contracts and agreements with telecommunication providers, vendors, and other counterparties.

- Obtaining information regarding employees, payroll/compensation, and related matters.

- Developing a list of creditors and outstanding obligations.

- Testing and attempting to verify accounts receivable and accounts payables, including in light of allegations asserted in the DE Chancery Court Action.

- Working with key employees to develop proposed budgets and seeking necessary information to work with the Lenders for access to and use of cash collateral.

- Working with key employees to understand nature of business relationship with vendors, customers and other parties in various foreign jurisdictions.

- Coordinating with the Debtors' Independent Director and professionals.

- Working to secure D&O insurance coverage.

19. As a result of this work, which is continuing, I have been able to get better clarity on the businesses of the Debtors, and potential restructuring strategies.

20. Since August 12, 2025, we have made significant progress, although much remains to be done, including the following:

- Assisted the Debtors in negotiating the Stipulation with the Lenders.

- Developed a position of trust with the key employees of the Debtors despite the obvious disruption caused by the Debtors' financial situation, fraud allegations, and bankruptcy filings.

- Obtained access to bank accounts, confirming that the Debtors' accounts hold in excess of $5 million in various accounts at Chase Bank, HSBC, JPMorgan Chase (Euro Account in London), and Key Bank.

- Prepared a preliminary 13-week cash flow, subject to ongoing testing and verification of financial data.

- Prepared preliminary budgets for Debtors' businesses.

- Working with Debtors' professionals on negotiating cash collateral agreement with Lenders.

- Working with key employees in analysis of contracts with key vendors and customers, including possible extensions or termination of certain contracts and agreements, and developing a model for future business operations;

21. Importantly, I am also working to prepare the Debtors' Schedules and Statement of Financial Affairs and to develop cash management protocols for the Debtors, to be submitted to this Court for approval. While there are difficult tasks that remain outstanding and a need further information, this early work has put the Debtors on a path toward reorganization for the benefit of all creditors.

22. One important task that remains open is to gaining access to the Debtors' U.S. offices in Garden City, New York, and ensuring that any books and records stored in in that space are preserved. As I understand it, the managing agent of the Landlord of the premises has indicated (through counsel) that it does not intend to object to the Access Motion.

**II.     Response to UST Motion:**

23. Contrary to the assertions in the UST Motion and as evidenced by the express filings by the Debtors on the docket of these bankruptcy cases, the Debtors have not filed the Access Motion as a "back-door application" to retain the services of myself as the proposed CRO or the services of the proposed Independent Director Robert Warshauer. In fact, the corporate resolutions entered into pursuant to applicable Delaware law and under the corporate

12

organizational documents of the Debtors, were specifically crafted to ease concerns of (or otherwise provide comfort to) creditors, including the Lenders, regarding the ongoing operations of the Debtors and the allegations in the DE Chancery Court Action.

24. The management of the Debtors is now in independent hands, with corporate governance in place for persons with sole authority to independently operate the businesses, perform forensic examinations of the Debtors' financial records, investigate the allegations asserted against former management, and create the best possible outcome for all creditors of the Debtors' estates. In fact, as noted above, myself as CRO and the Independent Director have spent the last several weeks getting to know the businesses, the operations, the financial situation, and the prospects for reorganization. I believe the addition of the Independent Director and myself as CRO are in the best interests of the Debtors' estates and their creditors.

25. Under the Stipulation and as evidenced by the resolutions, Bankim Brahmbhatt, the principal of the Debtors, has resigned and ceded all control to the CRO and Independent Director. He will maintain no further management authority or any role in the Chapter 11 Cases. Jigar Bhatt similarly maintains no management authority over the Debtors. The Independent Director has sole authority over the Debtors, and I, as CRO, will have control of the day-to-day operations under the Independent Director's supervision.

26. The Stipulation And CRO Motion was the result of arms-length negotiations with the Lenders, who are purportedly owed in excess of $500 million and assert that they hold a security interest in substantially all of the Debtors' assets including their receivables and cash. While the appointments of the CRO and Independent Director were confirmed by resolution of the Debtors in accordance with governing law, the Stipulation And CRO Motion was nonetheless filed, for avoidance of doubt, and at the Lenders' behest, to seek the express

approval of this Court. The central point of the Stipulation being the transparency in the enactment of these corporate governance protocols.

27. The Stipulation And CRO Motion, was designed to provide a smooth, efficient, and effective Chapter 11 process without the need for an independent trustee who will add another layer of unnecessary administrative expenses to these Chapter 11 Cases and will have to duplicate efforts already undertaken by the Independent Director and myself.

28. The Debtors have already demonstrated their desire to use the breathing spell afforded by the commencement of the Chapter 11 Cases to stabilize their operations and build creditor confidence with the guidance, management, oversight, and outreach of an independent CRO and Independent Director. The Debtors, through the Independent Director and I, have begun evaluating strategies to reorganize their businesses, either through the investment of new capital or through the sale of their businesses and are actively working to preserve the significant value of years-worth of customer development in the telecom industry for the benefit of their creditors.

Dated:   Philadelphia, PA
         September 9, 2025

*/s/John D. Baumgartner*
John D. Baumgartner